## JONES *v.* HICKS, sheriff.

The eighteenth amendment to the constitution of the United States, and the "national prohibition act" popularly known as the Volstead act, do not supersede or abrogate the existing State law known as the prohibition act, approved March 28, 1917 (Act Ex. Sess. 1917, p. 7). The court did not err, therefore, in refusing to release on writ of habeas corpus one held in custody by virtue of a warrant based on an accusation in a city court, charging the petitioner with violation of said State prohibition law.

No. 1904. NOVEMBER 11, 1920.

Habeas corpus. Before Judge Guerry. City court of Macon. January 31, 1920.

*Early W. Butler,* for plaintiff. *Will Gunn,* for defendant.

GILBERT, J. Jones was arrested under a bench warrant issued by the judge of the city court of Macon, based upon an accusation charging him with violating the prohibition law of this State on January 21, 1920. He filed a petition for the writ of habeas corpus, based upon the ground that the eighteenth amendment to the constitution of the United States, which was ratified on January 16, 1920, and the "national prohibition act," known as the Volstead act, superseded and abrogated all State laws on the subject covered by said eighteenth amendment, and that therefore, at the time this defendant is alleged to have committed the criminal offense charged in the accusation, there was no valid State prohibition law in existence. The court refused to release the petitioner, and that judgment is excepted to.

The first section of the eighteenth amendment to the Federal constitution prohibits "the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory

subject to the jurisdiction thereof, for beverage purposes." The second section of that amendment, as proposed to the States and ratified, provides that "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." Three views as to the proper construction of the second section have been generally discussed: (1) that concurrent power means joint power; (2) that the power is given to each, the legislation of either Congress or the States being of equal force with the other; and (3) that the power is in each, but that the legislation of Congress, as the supreme law of the land, will supersede any inconsistent State legislation.

"Concurrent power" does not mean "concurrent legislation;" and concurrent "power" to enforce is quite a different thing from "concurrent enforcement." "The words ' concurrent power ' in that section do not mean " joint power," or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs." "Appropriate legislation" by the Congress or the States, as employed in section 2, must be "to enforce," and not to " defeat or thwart." State of Rhode Island v. Palmer, 253 U. S. (40 Sup. Ct. 488, 64 L. ed.). The use of the word "several" before the words "States," and the nonuse of the word "joint," would seem to be significant in determining the intent. Had "joint" enforcement been desired, the simple and effective method would have been to specifically provide that the Congress and the States shall have power to *jointly enforce* this article by appropriate legislation.

The Supreme Court of the United States having adversely disposed of the contention that "concurrent power" means joint power, there remain two other views to be considered. Similar, but not identical, questions have been discussed heretofore by courts of several States and by the Supreme Court of the United States. None of these involve construction of delegated powers to be exercised concurrently. They are cited here for comparison, and not as controlling. Among the questions involved were, whether the States possessed the power, under the United States

constitution, of punishing persons guilty of counterfeiting; whether the United States was vested with exclusive jurisdiction over land ceded to it for public purposes; whether State laws in regard to the reclamation of fugitive slaves were in contravention of the constitution of the United States; and whether under the constitution the United States had the power to incorporate a bank, and the like. As early as 1843 it was said by the Supreme Court of Michigan: " In the 82d number of the Federalist, it is stated that the State governments would clearly retain all their original rights of sovereignty which were not, by that constitution, exclusively delegated to the Union. The alienation of State power or sovereignty would exist only in three cases: — first, when the constitution in express terms granted an exclusive authority to the Union; secondly, when it granted in one instance an authority to the Union, and in another prohibited the States from exercising the like authority; and thirdly, when it granted an authority to the Union, to which a similar authority in the States would be absolutely and totally contradictory and repugnant. This early exposition of the constitution has been repeatedly and uniformly approved by subsequent writers on the subject of constitutional law. 1 Kent's Com. 387; Calder v. Bull, 3 Dall. R. 386 [1 L. ed. 648]; Sturgess v. Crowningshield, 4 Wheat. R. 193 [4 L. ed. 548]; Houston v. Moore, 5 Wheat. R. 1 [5 L. ed. 19]; 3 Story on Const. 619; Serg. Const. Law, 275. And it is affirmed by the same authorities, that a mere grant of power in affirmative terms does not, per se, transfer exclusive sovereignty on such subjects to the Union. In all cases not falling within either of the classes already mentioned, the States retain either the sole power, or a power which they may exercise concurrently with Congress. This results not only from the general principles on which the Union is founded, but is within the letter of the tenth article of the amendments to the constitution, which declares that ' the powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people.' " Harlan v. People, 1 Doug. (Mich.) 211. In this case it was held that the several States, concurrently with Congress, may exercise the power of punishing counterfeiting of the current coin of the United States. The ruling has been followed in a number of other cases. State

*v.* Pittman, 1 Brev. (S. C.) 32 (2 Am. D. 645) ; State *v.* Antonio, 3 Brev. (S. C.) 562; In re Truman, 44 Mo. 181, wherein an earlier decision to the contrary, Mattison *v.* State, 3 Mo. 421, was overruled; Fox *v.* Ohio, 5 How. 410 (12 L. ed. 213) ; Cross *v.* N. C., 132 U. S. 131 (10 Sup. Ct. 47, 33 L. ed. 287) ; contra, *Rouse* v. *State,* 4 *Ga.* 136; State *v.* Brown, 2 Oregon, 221. It has been held that a State ceding to the United States exclusive jurisdiction over a tract of land within its limits reserves to itself the right to take private property therein; if the United States do not dissent, their acceptance of the grant with the reservation will be presumed. Ft. Leavenworth R. Co. *v.* Lowe, 114 U. S. 525 (5 Sup. Ct. 995, 29 L. ed. 264). It is not unusual for States to cede territory within their limits to the United States, reserving concurrent jurisdiction over such territory to enforce the criminal laws of the States. An interesting discussion of the relative powers of the States and the Federal Government will be found in Prigg *v.* Pennsylvania, 16 Peters, 611, 662, 663 (10 L. ed. 1088), and Moore *v.* Illinois, 14 How. 13 (14 L. ed. 306). In the former case, which involved the construction of the Federal constitution in regard to the reclamation of fugitive slaves, and whether that provision was exclusive or concurrent with the States, Mr. Justice McLean, in dissenting, said: "How a power exercised by one sovereignty can be called concurrent, which may be abrogated by another, I cannot comprehend; a concurrent power, from its nature, I had supposed must be equal. If the Federal government, by legislating on the subject, annuls all State legislation on the same subject, it must follow that the power is in the Federal government and not in the State. Taxation is a power common to a State and the general government, and it is exercised by each independently of the other; and this must be the character of all concurrent powers. . . The powers which belong to a State are exercised independently; in its sphere of sovereignty, it stands on an equality with the Federal government, and is not subject to its control: It would be as dangerous, as humiliating, to the rights of a State, to hold that its legislative powers were exercised, to any extent and under any circumstances, subject to the paramount action of Congress; such a doctrine would lead to serious and dangerous conflicts of power." The expression is also credited to this learned jurist,

that " Concurrent power excludes the idea of a dependent power." In the case of McCulloch v. Maryland, 4 Wheat. 405, 406, 410, 429 (4 L. ed. 601), where the court was discussing the power of the Congress to incorporate a bank and the power of a State to tax the same, it was said by Chief Justice Marshall: " If any one proposition could command the universal assent of mankind, we might expect it would be this — that the government of the Union, though limited in its powers, is supreme within its sphere of action." " The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land." " The creation of a corporation, it is said, appertains to sovereignty. This is admitted. But to what portion of the sovereignty does it appertain? Does it belong to one more than to another? In America, the powers of sovereignty are divided between the government of the Union and those of the States. They are each sovereign, with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other." " If we measure the power of taxation residing in a State, by the extent of sovereignty which the people of a single State possess, and can confer on its government, we have an intelligible standard, applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a State unimpaired; which leaves to a State the command of all its resources, and which places beyond its reach all those powers which are conferred by the people of the United States on the government of the Union, and all those means which are given for the purpose of carrying these powers into execution. We have a principle which is safe for the States, and safe for the Union. We are relieved, as we ought to be, from clashing sovereignty; from interfering powers; from a repugnancy between a right in one government to pull down what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy what there is a right in another to preserve." The sphere, therefore, in which the Congress, under the eighteenth amendment, may legislate for the enforcement of prohibition is limited to the precise terms stated in the amendment, to wit, "concurrent enforcement." " No court of

justice can be authorized so to construe any clause of the constitution as to defeat its obvious ends, when another construction, equally accordant with the words and sense thereof, will enforce and protect them." Prigg *v.* Pennsylvania, supra. The intent of the eighteenth amendment is obvious. There can be no confusion or difference of opinion as to what the Congress proposed to the States and what the States understood when they ratified the proposal as a part of the constitution of the United States. We know, as a matter of current history, that the subject had undergone elaborate discussions in the press and in the deliberations of the Congress. As the proposal originally passed the Senate it provided that "*The Congress* shall have power to enforce this article by appropriate legislation." When it was considered in the House of Representatives, at the threshold of its discussion an amendment was proposed by the judiciary committee of the House, providing that "The Congress *and the several States* shall have concurrent power to enforce this article by appropriate legislation." After thorough debate developing that subject and its importance, the amendment proposed in the House was adopted and subsequently was concurred in by the Senate, and as amended it is now a part of the constitution of the United States. During the debate in the House the crime of counterfeiting and similar questions were mentioned, and the question was propounded by Mr. Dewalt to Mr. Webb, Chairman of the Judiciary Committee having the measure in charge: "Suppose that [State] law was not in conformance with the regulations as passed by Congress for the enforcement of this provision, having, as you say, for this clause, concurrent power. Which of the two powers would be supreme, if any?" To which Mr. Webb replied: "The one getting jurisdiction first, because both powers would be supreme, and one supreme power would have no right to take the case away from another supreme power. . . Both powers are supreme to enforce this article, and the first getting jurisdiction would enforce it." 56 Congressional Record, Part 1, p. 424. Mr. Cannon, of Illinois, propounded the further question: "If the gentleman will allow me, under the police powers of the State every State can prohibit within its boundaries the manufacture and sale." To which Mr. Webb replied: "Indeed, within its boundaries. And that is what we want to permit

them to continue to do. We do not want 10,000 Federal officers, with all the expense of salaries, going over the country enforcing these laws, when the States have their own officers to do so and are willing to do so." Mr. Graham, the leader of the opposition, said: "I call your attention to section 2 of the article, which says that the United States and the States shall have concurrent jurisdiction — two sovereign powers to be exercised in company. The State may pass its legislation, may attempt to enforce the law in its way, and the United States in another way." Id. p. 464. For interesting discussions see 8 Cal. Law Review, 207; 33 Harvard Law Review, 968; 91 Central Law Journal, 1; Id. 205. It may be suggested that concurrent power to enforce may result in one being twice put in jeopardy for the same offense; and that if each of the forty-eight States retain the sovereign power to enforce the amendment, a lack of uniformity in the punishments may result. These questions likewise were thoroughly considered by the Congress, as shown by the debates. The constitutional inhibition against being twice put in jeopardy for the same offense was also considered in State v. Antonio, supra, and, as suggested by the deliberations in Congress, it was said that the plea of autre fois acquit and autre fois convict would doubtless be applicable. We are not, however, confronted with that question at present. The lack of uniformity, it may be suggested, will be no greater than did obtain throughout all of the States prior to the ratification of the eighteenth amendment, where prohibition as to intoxicating liquors existed. Indeed, it may be said that this lack of uniformity obtains in the same State, as scarcely any two judges agreed exactly on a schedule of punishments, the statute having allowed a wide margin within which legal punishment might be inflicted. Under the terms of the tenth amendment to the constitution of the United States, as universally construed, the States, prior to the ratification of the eighteenth amendment, possessed the exclusive power over this subject; therefore, when they delegated to the United States the "concurrent power" to enforce the amendment, they delegated only a part of their sovereign power over the subject. They parted with none of their own power "to enforce" prohibition within their own sphere of action. The amendment and legislation thereunder by the Congress does not impair the integrity of any

existing State statute to enforce prohibition, nor can it interfere with the enactment of any future legislation by the States for that purpose. From a consideration of the question as above presented, we reject the view that the legislation of Congress will supersede and abrogate the laws of the State which are appropriate for the enforcement of the amendment. We conclude that the power of Congress and of the States is equal and may be exercised by the several States for the purpose of enforcement concurrently within their legitimate constitutional spheres. Ex parte Guerra, (Vt.) 110 Atl. 224, and authorities cited. The first section of the amendment is in no way affected or qualified by the words "concurrent power," found in the second section. The court did not err in rendering a judgment refusing to release the petitioner on writ of habeas corpus.

*Judgment affirmed. All the Justices concur.*

FISH, C. J., concurs in the judgment.

ATKINSON, J., concurs in the judgment, but not in all that is said in the opinion. It is alleged in the petition for habeas corpus that the petitioner is held by the respondent, an officer, under an accusation in the city court, charging him with having in his possession, custody, and control certain intoxicating liquors. For a person to have in his possession, custody, or control any intoxicating liquors in this State is an offense under the State law. It is not an offense under the eighteenth amendment to the United States constitution and the act of Congress designed to carry that provision of the constitution into effect. Under no view could it be said that the amendment to the Federal constitution and the act of Congress referred to had the effect of superseding or in any wise changing so much of the State statute as made it an offense for a person to have intoxicating liquors in his possession, custody, or control.