## Ex parte CROOKSHANK.

(District Court, S. D. California, S. D.   February 3, 1921.)

No. 319.

1. **Intoxicating liquors ⟶13—Eighteenth Amendment did not affect state's right to prohibit.**

The adoption of the Eighteenth Amendment to the United States Constitution conferred on the federal government the power to prohibit the liquor traffic and deprived the states of the power they had theretofore to permit such traffic, but it did not affect the previously existing power of the state to prohibit such traffic within its borders.

2. **Intoxicating liquors ⟶10(2), 13—State Constitution and city charter authorized prohibiting liquor sales after adoption of Eighteenth Amendment.**

Under Const. Cal. art. 11, § 11, conferring upon cities the police power, subject only to control of the general laws, and the charter of Bakersfield, adopted under article 11, § 8, and ratified by the Legislature, St. Cal. 1915, p. 1552, art. 3, §§ 12, 13, the city council acquired full authority to exercise the police power of the state within its borders, and such power as might thereafter accrue to the state, which could be delegated to the city, so that it had power to prohibit the sale of intoxicating liquor after the adoption of the Eighteenth Amendment to the United States Constitution.

3. **Intoxicating liquors ⟶13—Action by state subsequent to Eighteenth Amendment unnecessary.**

Action by a state, under the concurrent power given by Const. U. S. Amend. 18, § 2, after that amendment was adopted is not necessary to enable a city theretofore vested with the police power of the state to enact an ordinance prohibiting the sale of intoxicating liquors.

4. **Intoxicating liquors ⟶13—Federal legislation under Eighteenth Amendment is supreme over inconsistent state legislation.**

Legislation enacted by Congress under the power granted it by Const. U. S. Amend. 18, is supreme over inconsistent state legislation relating to the liquor traffic.

5. **Intoxicating liquors ⟶13, 132—State act valid, unless directly conflicting with Eighteenth Amendment and federal act.**

A state act prohibiting the liquor traffic, and containing provisions for the enforcement of such prohibition, is valid, notwithstanding the adoption of Const. U. S. Amend. 18, and the Volstead Act, unless there is such repugnancy or conflict between the two acts that they cannot be reconciled, or constitutionally stand together.

6. **Intoxicating liquors ⟶13—Any legislation tending to defeat prohibition is unconstitutional.**

Under Const. U. S. Amend. 18, legislation regulating the liquor traffic, either by Congress or by state, to be valid, must be calculated to enforce the prohibition by appropriate means, and not to defeat or thwart it.

7. **Intoxicating liquors ⟶6—More drastic penalty under state law is not invalid.**

A state can legislate more rigorously than Congress in furtherance of complete prohibition; but it cannot legislate more liberally, so that the fact that a state prohibition act imposes a more drastic penalty than the federal act does not invalidate it.

⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Intoxicating liquors ⊙⊶13—Second section of Eighteenth Amendment did not change powers.**

Without the inclusion of the second section in the Eighteenth Amendment, either Congress under its implied powers to enforce the Constitution or the states under their general police powers, which they did not surrender, could have adopted legislation for prohibition of the liquor traffic, so that the only effect of that section, if any, was to enable the states to legislate in enforcement of the amendment as such.

**9. Municipal corporations ⊙⊶111(4)—Invalid regulations for possession and use of liquor do not invalidate separable state prohibition.**

Provisions in a city ordinance adopted under the state's police power, which had been conferred on the city, permitting the use of liquor for nonbeverage purposes, even if invalid, because in conflict with the Volstead Act, do not prevent prosecutions under the city ordinance for the illegal sale of intoxicating liquor.

Habeas Corpus. Application by S. C. Crookshank for writ to secure release from custody of city marshal. Demurrer to petition sustained, and petitioner remanded to custody.

Jackson Mahon, Jr., and Emmons, Aldrich & Heck, all of Bakersfield, Cal., for petitioner.

W. P. Grijalva, of Bakersfield, Cal., for City of Bakersfield.

Jesse E. Stephens, City Atty., and J. H. O'Connor, Deputy City Atty., both of Los Angeles, Cal., amici curiæ.

BLEDSOE, District Judge. On the 20th day of September, 1920, the council of the city of Bakersfield, operating under a freeholders' charter authorized by the Constitution of the state of California, duly passed an ordinance prohibiting certain uses of intoxicating liquors. Relevant sections involved contain the following provisions:

Section 1: "This entire ordinance shall be deemed to be an exercise of the power granted by Article Eighteen of the Constitution of the United States and of the police power of the city of Bakersfield for the protection of the public health, peace, safety, and morals of the people of said city, and all of its provisions shall be liberally construed for the accomplishment of these purposes."

Section 2: "The words 'intoxicating liquors' or 'intoxicating liquor,' wherever used in this ordinance, shall be construed to include any distilled, malt, spirituous, vinous, fermented or alcoholic liquor, which contains more than one-half of one per cent., by volume of alcohol, and all alcoholic liquids and compounds whether proprietary, patented or not, which are potable or capable of being used as a beverage, and which contain more than one-half of one per cent. by volume of alcohol.  *   *   * "

Section 4: "It shall be unlawful for any person, directly or indirectly, to manufacture, receive, sell, serve, give away, transport, or otherwise dispose of any intoxicating liquor within the city of Bakersfield, or to import any such liquor into, or to export any such liquor from said city, except as provided herein."

Section 6: "It shall be unlawful for any person to have, keep or store any intoxicating liquor in any public or semipublic place within said city except as provided herein."

Numerous other provisions are in the ordinance respecting the manufacture and use, under permits, of intoxicating liquor "for non-

beverage purposes." Section 15 provides a penalty in the following language:

Section 15: "Any person who shall violate any of the provisions of this ordinance shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not less than two hundred and fifty ($250.00) dollars, nor more than five hundred ($500.00) dollars or imprisonment in the county jail for a period not to exceed one hundred eighty (180) days, or by both such fine and imprisonment."

On the 13th day of December last, a complaint in proper form was filed in the police court of the city of Bakersfield, charging the above-named petitioner with a violation of section 6 of the ordinance above referred to, and alleging specifically that he did on the 11th day of December, 1920, within the corporate limits of the said city—

"willfully and unlawfully have, keep and store intoxicating liquor in a semi-public place known and located at 615 Kern street in the city of Bakersfield, without having a permit so to do, in violation of the provisions of section 6 of said ordinance," etc.

Application for the writ herein is made on the ground that petitioner's present detention, pursuant to process issued upon said complaint, is illegal, in that—

"The said ordinance attempts to define and punish an offense which has been and is now solely within the jurisdiction of the United States to define and punish, saving and except as the power is declared in said amendment to lie within the state to concurrently legislate and punish for the violation of the said amendment and that the state of California has not, since the adoption of the said amendment, passed any law of any kind or nature concurrently punishing the acts referred to in the said Eighteenth Amendment."

It is also asserted that the ordinance is invalid, in that it is in conflict with the Volstead Act, in that the minimum fine provided for by said ordinance is $250.

The contentions of the petitioner, if I understand them aright, are that "the people of the United States, through their respective legislatures, have granted to the United States, all power that they may have had to regulate or prohibit the traffic in intoxicating liquors"; assuming that position to be unsustained, it is urged that no power exists in a municipality to enact or enforce legislation in restraint of the liquor traffic, under the Eighteenth Amendment or otherwise, until the state has, by appropriate enforcement legislation, *enacted subsequently to the ratification of the amendment*, actually authorized such municipality so to do. Admittedly no such "enforcement" legislation has been enacted by the state of California per se.

In addition it is contended that the "concurrent power" conferred upon the several states by section 2 of the amendment should be strictly construed, and that it permits of no prohibitory legislation by a state, except such as is limited to an express prohibition of the things specially mentioned in section 1 of the amendment, viz. the "manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from," the United States; that a state, through any instrumentality, may go no further; and that, in consequence, any legislation aimed at the mere

"possession" of intoxicating liquor is beyond the power of the state and therefore void. Finally, it is said that the provisions of the ordinance in question, assuming their validity otherwise, are in such conflict with the terms of the Volstead Law (41 Stat. 305) that they cannot stand.

[1] The circumstances leading up to and attending upon the submission and ratification of the Eighteenth Amendment to the federal Constitution are of such recent occurrence as to require no restatement at this time. Previous to the adoption of that amendment, it was the established law that the several states possessed the amplest authority, under the police power, to regulate and even absolutely prohibit the liquor traffic in any of its various forms or occurrences. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Purity Extract Co. v. Lynch, 226 U. S. 192, 201, 33 Sup. Ct. 44, 57 L. Ed. 184. It may not, I think, be maintained with success that in the adoption and ratification of the Eighteenth Amendment the several states were surrendering any of the powers theretofore possessed by them, respecting their own jurisdiction to prescribe effective prohibition of that traffic. In all that was done, they were simply conferring upon the federal government the like power to prohibit, which theretofore, in virtue of its organization and the character of the powers reserved to the states, it had not possessed. Hamilton v. Distilleries Co., 251 U. S. 146, 156, 40 Sup. Ct. 106, 64 L. Ed. 194. In other words, there was a surrendering by the states of the power to permit the liquor traffic, but no diminution of their power to prohibit it; they accorded to the federal government the jurisdiction to enforce absolute prohibition of the traffic (Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260; Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946, decided June 7, 1920); but they still retained the same right to themselves (Commonwealth v. Nickerson [Mass.] 128 N. E. 273, 277).

As a consequence, in so far as Congress should fail successfully to provide for effective prohibition, the state under its retained right could legislate to accomplish that end. In addition, pursuant to the express terms of the "concurrent power" granted, the state might, "by appropriate legislation," in consonance with congressional action, itself legislate in enforcement of the Eighteenth Amendment within the limits of its own territory. Such I conceive to be the general effect of the situation created.

[2] The state of California, as a sovereign state of the Union, by its Constitution (section 11, art. 11) has heretofore conferred upon "any county, city, town, or township" the authority to "make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." This grant of power, it has been determined by the courts of California, is a "direct grant" (Denton v. Vann, 8 Cal. App. 677, 680, 97 Pac. 675), and authorizes the subordinate agencies mentioned, without permissive action on the part of the state Legislature, to exercise within their respective limits "the entire police power of the state, subject only to the control of the general laws" (Odd Fellows' Cemetery

Ass'n v. San Francisco, 140 Cal. 226, 230, 73 Pac. 987, 988). No general law of the state affecting the subject-matter involved herein has been called to my attention.

The charter of the city of Bakersfield, enacted pursuant to constitutional authority (section 8, art. 11, Constitution of California), and thereafter ratified by the Legislature of the state (Stats. Cal. 1915, p. 1552 et seq.), provides in section 14 of article 3 thereof that the legislative power of the city, except as reserved to the people, shall be vested in a council. Section 12 of the same article provides that the city—

"may make and enforce local police, sanitary and other regulations, and may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the city. The city shall have all powers that now are or hereafter may be granted to municipalities by the Constitution or laws of the state of California; * * * the enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein, the city shall have and may exercise all other powers which, under the Constitution and laws of California, it would be competent for this charter specifically to enumerate."

[3] Apparently, therefore, by the Constitution of the state, plenary authority in the matter of the local exercise of the police power was vested in the city council of the city of Bakersfield; and, in addition, such power as might thereafter accrue to the state of California, if any, the exercise of which could be delegated to the city of Bakersfield, was thereby delegated to it by the charter thus adopted. If the state of California is in receipt of any "new" power, in virtue of the terms of section 2 of the Eighteenth Amendment, such power, it would seem, has already been appropriately conferred upon the city of Bakersfield. The city, at least, has acted subsequently to the ratification of the Eighteenth Amendment, though I discover no reason why "appropriate legislation," pursuant to that amendment, must needs have been enacted subsequently thereto. Commonwealth v. Nickerson, supra (Mass.) 128 N. E. 283.

[4] Whether entirely relevant or not, much of the argument herein centered around the meaning to be accorded the phrase "concurrent power" as the same appears in section 2 of the Eighteenth Amendment. Much possible debate on the question, however, has been set at rest by the conclusion announced by the Supreme Court of the United States in Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 488, 64 L. Ed. 946, decided June 7, 1920, and the cases accompanying it. After announcing that the "concurrent power" referred to does not imply joint power, as between the states and the national government, nor power divided between the states and the national government "along the lines which separate and distinguish foreign and interstate commerce from intrastate affairs," the court in paragraph 9 announces its conclusion as follows:

"The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them."

By the form of the decision handed down, being a mere statement of the conclusions of the court, we are deprived of the illuminating discussion that usually lends clarity to the ultimate conclusions announced. However, accepting the conclusion stated at its full face value, which conclusion seems to be in complete accord with the reason of the thing, the statement by the court, that the power confided to Congress by section 2 of the amendment is in no wise "affected by action or inaction on the part of the several states," can mean nothing less than that which it ought to mean, viz. that in a matter with respect to which, by proper constitutional grant, the federal government has been accorded the jurisdiction to act, its action once taken, its laws once constitutionally enacted, become the supreme law of the land; and no single state or group of states, or any subdivision thereof, may enact any law or ordinance in contravention of the law so promulgated by the supreme legislature. The act of the greater instrumentality is not "affected by" the action of the lesser in contravention thereof.

This results from the fact that, acting within its constitutional sphere, the United States is the supreme sovereign in this land. It is but a recognition of the obvious truism announced by Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 405 (4 L. Ed. 579):

"The government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result necessarily from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all."

[5, 6] In the practical exercise of the police power prohibiting the liquor traffic, any conflict between the exercise of such power by the federal government and that by a state government would have to amount to repugnancy or conflict of such a direct and positive nature as that "the two acts could not be reconciled or consistently stand together." Sinnot v. Davenport, 22 How. 227, 243, 16 L. Ed. 243. Such conflict appearing, the federal enactment would prevail, of course. Any legislation enacted by Congress, pursuant to the amendment, must be calculated to enforce it by appropriate means, and not to "defeat or thwart the prohibition" contained therein. Rhode Island v. Palmer, supra. For the same reason, any legislation enacted by the state, or any instrumentality exerting the power of the state, must be in aid of the enforcement of the amendment or in furtherance of the prohibition therein commanded; the several states have lost the power to do otherwise.

[7] As a necessary consequence, it would never be competent for a state, in a matter respecting the use of liquor, to enlarge upon rights limited by congressional action. It might legislate more rigorously than Congress, in furtherance of more complete prohibition; but, in view of the supremacy of Congress in the field, it could not legislate more liberally. Nor would the fact that different, particularly more drastic, penalties are prescribed by the inferior sovereignty, necessarily result in their invalidity. In re Hoffman,

155 Cal. 114, 119, 99 Pac. 517, 132 Am. St. Rep. 75; Ex parte Ramsey (D. C.) 265 Fed. 950, 954; Jones v. Hicks, 104 S. E. 771, 773.

[8] The truth is, in my judgment, that too much concern seems to have been manifested because of the incorporation of section 2 into the Eighteenth Amendment. The power thereby sought to be conferred upon Congress would have been conferred by the adoption and ratification of section 1 alone; a power being accorded to the federal government, Congress, even in the absence of an express grant, would be authorized to legislate in the exertion of such power. Paragraph 18 of section 8 of the first article of the federal Constitution specifically authorizes Congress—

"to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or any department or official thereof."

Obviously this section would authorize Congress to enforce, by appropriate legislation, the Constitution or any amendment thereof. As was said by Hamilton in the Thirty-First number of the Federalist, respecting the particular provision just quoted, together with the one contained in the second clause of article 6:

" * * * It may be affirmed with perfect confidence that the constitutional operation of the intended government would be precisely the same, if these clauses were entirely obliterated, as if they were repeated in every article. They are only declaratory of a truth which would have resulted by necessary and unavoidable implication from the very act of constituting a federal government, and vesting it with certain specified powers."

So, too, the authority of the several states was not materially changed by the inclusion of the second section. As heretofore shown, they never surrendered their power, originally possessed in virtue of their sovereignty, to prohibit effectually within their respective limits the traffic in intoxicants. They still have that power. They merely granted to the federal government the same right within its domain. In addition, by the positive terms of the grant to themselves of "concurrent power," they were authorized to legislate in enforcement of the amendment—a lesser power, strictly speaking, than they already possessed, in virtue of their own sovereignty—and, if they wished, to enforce in their own courts the prohibitions and penalties to be provided by Congress for enforcement in the federal courts.

A really interesting query, which, however, need not be determined in the instant case, is whether, under the terms of section 2 of the Eighteenth Amendment and the specific grant of concurrent power to the several states therein, a prior conviction or acquittal in a state or federal court, the one first obtaining jurisdiction, would not operate as a plea in bar in the other jurisdiction. Jones v. Hicks, supra, 104 S. E. 773, 774. It may be that Congress had that in mind, together with the fact of permitting the several states and the municipalities thereof to derive financial benefit from the collection of fines, etc., when the concurrent power to enforce the amendment was specifically delegated to the states. If the enforcement of prohibition on the part of the state is to be deemed merely an exercise of the power conferred by section 2, then it would seem as if there could not be

two prosecutions for the same offense in the different jurisdictions. In that sense, the state would be exerting a power conferred by the federal government, rather than a power originally belonging to it, and a conviction or acquittal under the federal law, irrespective of the court in which it might be had, would operate as a plea in bar. The plea of once in jeopardy—

"can surely never be successfully asserted in any instances but those in which jurisdiction is vested in the state courts by statutory provisions of the United States." Houston v. Moore, 5 Wheat. 1, 35 (5 L. Ed. 19).

[9] Detailed provisions are found in the ordinance in question relative to sales of liquor for nonbeverage purposes, pursuant to permits, etc., with respect to which, even assuming their invalidity, petitioner is in no wise concerned. It will be time enough to investigate those provisions when some one is brought before the court because of their existence. Seemingly they are separable, and, in light of what has been said hereinabove, can in no wise impinge upon the enforcement of the Eighteenth Amendment as provided for by Congress in the Volstead Act, nor result in obstructing or embarrassing the execution of the same. Ex parte Guerra (Vt.) 110 Atl. 224, 229.

Summarizing, then, my conclusions are that the ordinance in question is in no wise substantially inconsistent or in conflict with the Volstead Act, which is the announcement of the supreme legislature; that it is calculated to contribute to the proper, prompt, and expeditious enforcement of the Eighteenth Amendment; that it is a lawful exercise of the police power belonging to the state of California, both in virtue of the state's sovereignty and in virtue of the grant of power contained in section 2 of the Eighteenth Amendment; and, finally, that it operates adequately to justify the detention of the petitioner as for its asserted violation.

In consequence whereof, the demurrer to the petition for a writ of habeas corpus is sustained, and the prisoner is hereby remanded to the custody of the city marshal.