### Meriwether v. State.

[87 South. 411, No. 21431.]

Intoxicating Liquors.  *Eighteenth Amendment and Volstead Act do not supersede or abrogate existing state prohibition law.*

Since the prohibition laws of the state of Mississippi do not in any respect contravene the essential and dominant purpose of the Eighteenth Amendment to the Constitution of the United States, and since the power exercised by the state under chapter 189, Laws of 1918, is in support of the main object of such amendment, the National Prohibition Act, commonly known as the Volstead Act, passed in pursuance of the Eighteenth Amendment to the Constitution of the United States, does not supersede or suspend the said chapter 189, Laws 1918, and the jurisdiction of the state courts to enforce the provisions of said chapter is not affected by the fact that Congress has legislated upon the subject of prohibition.

Appeal from circuit court of Leflore county. ·

Hon. S. F. Davis, Judge.

J. B. Meriwether was convicted before a justice of the peace of unlawfully having in his possession intoxicating liquor.   On appeal to the circuit court, a demurrer was overruled, and defendant was again convicted, and he appeals.   Affirmed.

*Littleton Upsher,* for appellant.

Meriwether's offense is alleged to have accrued after February 1st, and it is therefore contended that the state law is not applicable to his offense because by prohibiting the use of liquors or its possession in entirety it was in effect repealed when the Federal law went into effect.

It is further contended by reason of the fact that the Congress of the United States acting in pursuance of a power granted to it under the Constitution has legislated in regard to the possession of intoxicating liquors, the subject is entirely removed from state jurisdiction.

In support of these contentions we will call the court's attention to two classes of cases which we consider analogous to one at bar. That is, those arising under the Uniform Bankruptcy Act, and the regulation of interstate commerce. To which might be added cases under the Uniform Law of Naturalization and the Federal Employer's Liability Acts.

Article VI of the constitution of the United States provides: "This constitution and the laws of the United States which shall be passed in pursuance thereof; and all treaties, etc., shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

Thus, to reduce our contention to its simplest, we say that the National Prohibition Act passed in pursuance of the Eighteenth Amendment is the supreme law of the land, and since it in terms allows the possession of liquor under certain circumstances, the laws of Mississippi denying the right to such possession are of no effect.

True the Eighteenth Amendment provides that the states shall have concurrent jurisdiction to enforce the terms of this amendment. But the states have always had concurrent jurisdiction to enforce the terms of the constitution, and this amendment thus introduces no new principle of constitutional interpretation.

᠂ Black on Constitutional Law, pages 157 and 158, says: "In all such cases of concurrent authority, the enactments of the individual states can be no more than provisional; that is to say, their continuance in force depends upon the determination of Congress not to exercise its own power over the subject by a general law. If Congress shall choose to enter upon the domain confided to its jurisdiction, and to regulate the same by a statute, the result is that all existing state laws on the same subject are superseded and suspended, at least so far as they are inconsistent with the act of congress. The federal law · does not make them invalid if they were not before. Neither does it repeal them. It merely assumes to itself entire control over the whole subject and leaves nothing for the state laws to operate upon." Citing in support of this statement, *Sturgis* v. *Stofford,* 45 N. Y. 446; *McCulloch* v. *Maryland,* 4 Wheat. 429; 1 Story, Const. 447.

Thus the law is stated in 6 R. C. L. 139-40. By reason of the provision of the United States constitution that the constitution and laws passed in pursuance thereto shall be the supreme law of the land, when Congress passes a law in that field of legislation common to both federal and state governments, the act of Congress supersedes all inconsistent state legislation. Congress in regulating a matter within the concurrent field of legislation speaks for all the people and all the states, and it is immaterial that the public policy embodied in the congressional legislation overrules the policies theretofore adopted by any of the states with respect to the subject-matter of such legislation. Citing in support thereof: *Gibbons* v. *Ogden,* 9 Wheat. 1, 6 L. Ed. 23; *Henderson* v. *New York,* 92 U. S. 259, 23 L. Ed. 543; *Lake Shore & M. S. Ry.* v. *Ohio,* 43 L. Ed. 858; *Savage* v. *Jones,* 56 L. Ed. 1182; *Mondou* v. *N. Y. N. H. Ry. Co.,* 223 U. S. 1, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, and numerous other cases.

Thus the supreme court of Wisconsin speaking through DODGE, J., says: "Within the field of authorized legislation the federal power must, in the nature of things, be

supreme in all parts of the United States. . . . In
*Cooley* v. *Port Wardens,* 12 How. 299, 318, 13 L. Ed. 996,
1004, it was said of this class of legislation: 'It is not
the mere existence of such a power but its exercise by Con-
gress, which may be incompatible with the exercise of the
same power by the states, and that the states may legis-
late in the absence of congressional regulations.' In *Penn-
sylvania* v. *Wheeling & B. Bridge Co.,* 18 How. 421, 15 L.
Ed. 435, where a state law authorized the building of a
bridge over a navigable water, it was declared that, even
in a matter of a bridge, if Congress chooses to act, its ac-
tion necessarily precludes the action of the state. . . . .
See, also, *Gibbons* v. *Ogden.* It will be observed from
these utterances that it is not a mere question of conflict-
ing laws of jurisdictions, so that the law of a state will
be valid so far as not antagonistic to a federal law. The
question is more properly one of jurisdiction over the sub-
ject; the holding being that within the second class of
subjects above outlined, silence of Congress is deemed a
resignation to the states of such jurisdiction and author-
ity, but action by Congress upon the particular subject is
deemed an assertion of the federal power a declaration of
the policy that the subject shall be under federal and not
state regulation." *Wisconsin* v. *C. M. & St. P. Ry. Co.,* 117
N. W. 686, 19 L. R. A. (N. S.) 326. See, also, *State* v.
*Texas N. O. R. Co.,* 124 S. W. 984, and *State* v. *Missouri P.
R. Co.,* 212 Mo. 658, 111 S. W. 500, and *Mondou* v. *N. Y. H.
H. & N. Ry. Co.,* cited above; *Northern Pacific* v. *Wash-
ington ex. rel., Atkinson,* 56 L. Ed. 237.

Thus in the celebrated cases of New Jersey and Ken-
tucky recently decided by the United States supreme court,
where the states attempted to enjoin the enforcement
of the National Prohibition Act, because those states had
passed laws making the standard of alcohol higher than
the federal act, that the federal agents could enforce the
provisions of the federal act, notwithstanding a more lib-
eral policy had been adopted on the part of the states. No
reasons were assigned by the court for this holding, it is

true, but it is inconceivable that any reasoning other than that of the federal act being paramount to the state law on the same subject could possibly have influenced the court in its decision. New Jersey, Rhode Island, and Kentucky sought to be more liberal than the United States while Mississippi seeks to be more stringent. The difference is one of degree, but not of principle.

That an act punishable under the laws of the United States within the scope of its criminal authority vests entire jurisdiction in the federal courts has been decided by this court in *State* v. *Bardwell,* 72 Miss. 535. See, also, cases therein cited.

Other cases from the courts of the several states and the United States could be cited in support of this contention, but we will rest with the case cited above. There is an apparent and evident conflict between the provisions of the state law and the federal law on the point at issue; one or the other must yield; it is an anachronism that one jurisdiction should say "thou mayst," the other, "thou shalt not." No man can serve two masters, nor obey conflicting laws of two powers occupying the same territorial jurisdiction. One law must, in the very nature of things be supreme, and the weaker power must yield. That power is the state law, and we submit that with the yielding of the state law, the demurrer should have been sustained and the appellant discharged. There is no dispute on the facts.

*Fred H. Lotterhos,* for appellee.

By chapter 189, Laws of 1918, it is made unlawful to have control or possession of intoxicating liquors in Mississippi. The legislature had the power to make this enactment under the police power of the state. See *Purity Extract & Tonic Co.* v. *Linch,* 100 Miss. 650, and 59 L. Ed. 184; *City of Jackson* v. *Gordon,* 119 Miss. 325; *Crane* v. *Campbell,* 62 L. Ed. 304.

It is claimed here that the action of Congress in passing the National Prohibition Act, by virtue of the Eighteenth Amendment, has removed from the state's jurisdiction the

prohibition and regulation of intoxicating liquors by legislation. In times of peace, Congress had no constitutional authority to prohibit the possession of intoxicating liquors within a state; nor has it such power now except when the possession is incidental to the manufacture, sale or transportation of such liquors in violation of the Acts of Congress. The state, alone by virtue of the powers reserved when the constitution was adopted and as amended, have jurisdiction in such cases. Congress cannot invade this domain; being without constitutional authority. The Eighteenth Amendment authorizes Congress and the several states to enforce the prohibition against the manufacture, sale and transportation of intoxicating liquors; thus far Congress has power concurrently with the states and no farther. If it attempted to control possession intrastate, not incidental to manufacture, sale or transportation, its action would be without constitutional authority and a violation of the constitutionally reserved rights of the states. Hence, had Congress attempted to legislate such prohibition intrastate, its action would have been a nullity and no such taking of jurisdiction as could foreclose the jurisdiction of the state.

However, the National Prohibition Act does not invade this field, since its condemnation of possession extends authoritatively no farther than to give practical effect to its provisions making effective the constitutional prohibition of manufacture, sale and transportation of intoxicating liquors. This phase of the legislation has not been passed upon directly by the supreme court of the United States, but the final solution has been forecasted by the concurring opinion of Mr. Justice McRENOLDS, in *Re Street* v. *Lincoln Trust Co.,* 65 L. Ed. 7.

Wherefore, the Eighteenth Amendment, not prohibiting the possession intrastate, when not related to manufacture, sale or transportation, and not giving Congress power to regulate such possession, it follows that the state occupies this field alone and; therefore, chapter 189 of the Laws of 1918, remains as it was, sufficient and untrammeled in the

punishment of possession of intoxicating liquors in Mississippi, a conviction under the chapter now is as valid as before the Eighteenth Amendment was adopted.

The amendment should not be given such construction as would virtually destroy the efforts on the part of the states to apply the principle of the amendment. The state should be given pause only when its laws contravene the essential purpose of the amendment.

"Concurrent power, here means equal power, except that where the state goes a shorter distance than Congress in carrying out the purpose of the amendment, the act of the legislature is void as a justifiable standard. See *Rhode Island* v. *A. Mitchell Palmer,* No. 16, 64 L. Ed. 612; *Ruppert* v. *Caffey,* 64 L. Ed. 138. The correctness of the foregoing conclusion seems to be clear from the consideration of: *Ex Parte Guerra* (Vt.), 110 Atl., 224; *Commonwealth* v. *Nickerson* (Mass.), 128 N. E. 273; *Ex Parte Ramsey,* 265 Fed. 950; *Jones* v. *Hicks* (Ga.), 104 S. E. 771; *Jones* v. *Hicks,* parallels the instant case perfectly. In two of the cases mentioned, like the one at bar, the state statute antedated the Eighteenth Amendment.

The state guards its reserved powers with the utmost fidelity and would view with apprehension an interpretation which would force the state from the field of legislation when Congress saw fit to act in a matter which therefore was subject to the regulation by the state only, and which laterly, by constitutional amendment was made subject to legislation by the United States and the states with concurrent power. The federal courts do not deny our jurisdiction nor do the state courts of last resort which have thus far spoken.

W. H. COOK, J., delivered the opinion of the court.

The appellant, J. B. Meriwether, was convicted in the court of a justice of the peace of Leflore county on a charge of unlawfully having in his possession and control intoxicating liquors, and from this conviction he appealed

to the circuit court. There he interposed a demurrer setting forth, among other things, that the laws of the state of Mississippi making the possession of intoxicating liquors a crime have been annulled and superseded by the Eighteenth Amendment to the Constitution of the United States and the act of Congress passed pursuant thereto commonly known as the Volstead Act (41 Stat. 305). This demurrer was overruled, and appellant was again convicted and sentenced, and from the judgment this appeal was prosecuted.

From the record in this case it appears without dispute that the liquors found in appellant's possession were not kept by him at a place or under circumstances which is permissible either under the terms of the National Prohibition Act or the prohibition laws of the state of Mississippi, and the sole question presented for decision by this appeal is whether chapter 189 of the Laws of 1918 has been repealed or superseded by the National Prohibition Act.

It is contended by appellant that, inasmuch as Congress, under the Eighteenth Amendment, has legislated in regard to the manufacture, sale, transportation, importation, and exportation of intoxicating liquors, the subject is entirely removed from state jurisdiction, and all state legislation upon the subject of prohibition has been repealed or superseded by the federal law.

Prior to the ratification of the Eighteenth Amendment to the Constitution of the United States, the legislature of the state of Mississippi had enacted legislation prohibiting the manufacture of intoxicating liquors, and prohibiting the possession of such liquors within the borders of the state except for medical and sacramental purposes. This legislation is embraced in chapter 189, Laws of 1918, and section 2 of this Act reads as follows:

"Sec. 2. That it shall be unlawful for any person, firm or corporation to receive or accept, directly or indirectly, from any of the common carriers, companies or persons mentioned in section 1 of this act, or to have, control or possess in this state or for any person to personally trans-

port or bring into this state or from place to place in this state, any of the liquors mentioned in section 1 of this act, whether intended for personal use or otherwise, or whether in the original package or otherwise, save as provided in section 12 of this act."

The Eighteenth Amendment to the Constitution of the United States became operative under its terms on January 16, 1920, and the amendment itself expressly reserves to the states concurrent power to enforce it by appropriate legislation. Sections 1 and 2 of the amendment read:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

It cannot be successfully contended that the prohibition laws of the state of Mississippi in any respect contravene the essential and dominant purpose of the amendment, or that the power exercised by the state under its prohibition laws is not in aid of the enforcement of the amendment, and this should be kept in view in construing the meaning of "concurrent power to enforce" in its relationship to the validity of the existing laws of the state of Mississippi relative to intoxicating liquors.

While it appears that the supreme court of the United States has not decided the exact question here presented, yet we think the conclusions announced by that court, and the discussion by Chief Justice WHITE in his concurring opinion, in the case of *Rhode Island* v. *Palmer*, 253 U. S. 387, 40 Sup. Ct. 488, 64 L. Ed. 946, strongly forecast the ultimate decision of the question of the validity of state legislation which is in aid of the enforcement of the amendment.

In *Rhode Island* v. *Palmer, supra,* the court simply announced its conclusion, without setting forth the reasoning by which they were reached, and the seventh, eighth, and ninth conclusions are as follows:

"(7) The second section of the amendment—the one declaring 'the Congress and the several states shall have concurrent power to enforce this article by appropriate legislation'—does not enable Congress or the several states to defeat or thwart the prohibition, but only to enforce it by appropriate means.

"(8) The words 'concurrent power,' in that section, do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several states or any of them; nor do they mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

"(9) The power confided to Congress by that section, while not exclusive, is territorially co-extensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them."

The Chief Justice, in announcing his concurrence in the conclusions of the majority of the court in *Rhode Island* v. *Palmer, supra,* used the following language:

"In the first place, it is indisputable, as I have stated, that the first section imposes a general prohibition which it was the purpose to make universally and uniformly operative and efficacious. In the second place, as the prohibition did not define the intoxicating beverages which it prohibited, in the absence of anything to the contrary, it clearly, from the very fact of its adoption, cast upon Congress the duty, not only of defining the prohibited beverages, but also of enacting such regulations and sanctions as were essential to make them operative when de-

fined. In the third place, when the second section is considered with these truths in mind, it becomes clear that it simply manifests a like purpose to adjust, as far as possible, the exercise of the new powers cast upon Congress by the amendment to the dual system of government existing under the Constitution. In other words, dealing with the new prohibition created by the Constitution, operating throughout the length and breadth of the United States, without reference to state lines or the distinctions between state and federal power, and contemplating the exercise by Congress of the duty cast upon it to make the prohibition efficacious, it was sought by the second section to unite national and state administrative agencies in giving effect to the amendment and the legislation of Congress enacted to make it completely operative."

It will thus be seen that by conclusion 7 the supreme court of the United States has finally disposed of the contention that any state may by its legislation defeat prohibition, and expressly holds that section 2 of the amendment giving Congress and the several states concurrent power to enforce the amendment by appropriate legislation does not authorize Congress or the states to defeat or thwart the prohibition in section 1, but only to enforce it by appropriate means.

In conclusion 8 the court expressly held that the words "concurrent power" in section 2 of the amendment do not mean joint power, and that they do not mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

The contention that "concurrent power" means joint power, having been settled in the negative, it then remains to consider what is in fact the purpose and effect of the language of section 2 as applied to state legislation in the field of prohibition. The contention of appellant that, since Congress has entered the field of prohibition legislation, all state laws are devitalized, and the subject is entirely removed from state jurisdiction, is manifestly un-

tenable. This contention is in plain contradiction of the language of the amendment and would render section 2 of the amendment meaningless and purposeless. Undoubtedly Congress would have the power to enforce the amendment if section 2 had not been added thereto, and the evident purpose of the addition of this section was to guarantee to the states the right and power to enforce the amendment within their territorial limits and to unite the state and national governments in the enforcement thereof. In ratifying the amendment the states have expressly reserved the power to enforce it by appropriate legislation, and state legislation directed to the enforcement of prohibition is not affected by the fact that Congress has enacted legislation on the subject. Since the power to be exercised by Congress and the states is not a joint power, legislation by the states need not be identical with that of Congress in language, terms, means adopted, or punishment prescribed, provided it is directed to the enforcement of the amendment. Of course, the state cannot authorize that which is prohibited by Congress, and thus defeat legislation enacted by Congress, to enforce the amendment. The purpose of the amendment cannot be effected by granting rights and privileges thereunder, but it must be enforced by prohibiting the things forbidden by the amendment, and since the provisions of chapter 189 of the Laws of 1918 are in aid of the enforcement of the amendment, and contribute to the general aim and purpose thereof, we cannot assent to the view that any of its provisions are abrogated or superseded by the legislation of Congress. A contrary construction of this section of the amendment would defeat its obvious purpose and render the entire section meaningless and useless. That the construction which we have adopted accords with the purpose of Congress in proposing the amendment in its present form, and also with the understanding of the states when they ratified it, cannot be doubted.

In this connection it is interesting to note the origin of section 2 of the amendment, and the understanding of the

authors thereof as to its meaning, purpose, and effect. As the proposed Eighteenth Amendment originally passed the Senate, it provided that "the Congress . . . shall have power to enforce this article by appropriate legisla- tion." When it was under consideration by the judiciary committee of the House of Representatives, section 2, pro- viding that the Congress and the several states shall have concurrent power to enforce the article by appropriate legislation, was added. The reasons for inserting this sec- tion, and the object sought to be made certain thereby, clearly appear from statements of the chairman of the judiciary committee made at the time the amendment was under consideration by the House of Representatives. In the Congressional Record of December 17, 1917, at page 423, there appears a statement by Chairman Webb which in part is as follows:

"The first amendment adopted in the judiciary commit- tee was the new section 2. As it passed the Senate it pro- vided that the Congress should have the power to enforce this article by appropriate legislation. Most of the mem- bers, including myself, of the judiciary committee, both wet and dry, felt that there ought to be a reservation to the state also of power to enforce their prohibition laws; and therefore we amended the resolution by providing that the Congress and the several states shall have 'concurrent' power to enforce this article by appropriate legislation. . . . I believe, regardless of our division on the dry and wet question, every member will agree with us that this is a wise and proper amendment. Nobody desires that the federal Congress shall take away from the various states the right to enforce the prohibition laws of those states. If we do not adopt this amendment from the com- mittee, there might be a fight in Congress every two years as to whether the states should be given the right to help enforce this proposed article of the Constitution."

Again, in a later statement Judge WEBB expressed the following views:

"My idea is that section 2 of the national prohibition amendment gives the federal government and the states the right to enforce the constitutional amendment in their own way. . . . Some wet states might not pass laws against the manufacture and sale of liquor at all, but their nonaction would certainly not prevent the prosecution of one of their citizens for violating the Volstead Act based upon the constitutional amendment. On the other hand, some states may pass a law so drastic that they will not permit any beverage to be sold which contains any trace of alcohol, and in such case the Volstead Act would not give such person immunity from prosecution under state laws. My understanding of section 2 of the amendment is that it makes both the state and the federal government sovereign in the enforcement of the prohibition law, and each sovereign has the right, so far as its jurisdiction goes, to enforce this constitutional amendment in its own way.

"I think this is the view that Congress took of the matter when the act was passed, and it is certainly the view which I took when I explained the meaning of section 2 to the House (December 17, 1917), when we passed the resolution by more than two-thirds majority.

"I cannot see any conflict of power or jurisdiction which might arise from the action or nonaction of a state, or from the action or nonaction of the Congress. Each has its sovereign jurisdiction and can exercise it in its own way."

Later there appears in the Congressional Record a statement by Congressman Volstead, who had become chairman of the judiciary committee, expressing his views as to the purpose and meaning of section 2, and in which the following language is used:

"The resolution proposing this amendment originated in the Senate; when it reached the House it was referred to the committee on the judiciary, of which I was then a member. It was there discussed among the members, especially among those who favored its adoption. It was, among other things, pointed out that if the amendment

should be adopted in the form in which it had passed the Senate its effect might be to repeal or enable Congress to suspend every prohibition statute in the country, and that it ought to be made the duty of the state as well as the national government to enforce it, as the states have courts and police forces equipped to do that work. Attention was also called to the fact that states and the federal government exercised the power to punish the same act each in its own courts and under its own laws. As this power has usually been spoken of by courts and law-writers as concurrent jurisdiction, and as it was to confer the like power on Congress and the several states, the phrase 'concurrent power' was adopted as expressing that idea. I do not know who wrote the provision, but I know that was the idea sought to be written into the amendment. . . . Any act left unpunished by a state may nevertheless be punished by the national government if such punishment tends to enforce the amendment, and likewise, to accomplish the same purpose, an act left unpunished by the national government may be punished by the state. . . . The object of making the power concurrent was to obviate the rule that where Congress acts under a granted power it has the effect of suspending or annulling state laws 'on the same subject. It was the intention that the power to enforce should concur in the sense that at the same time and to accomplish the same purpose Congress and the several states might make and enforce laws."

The question of the effect of section 2 of the amendment upon state legislation has recently engaged the attention of several of the state and federal courts, and in the conclusion that existing state laws are not abrogated or superseded by the National Prohibition Act there appears to be no disagreement. In the recent case of *Commonwealth* v. *Nickerson*, 236 Mass. 281, 128 N. E. 273, the Supreme Court of Massachusetts says:

"The amendment does not require that the exercise of the power by Congress and by the states shall be coterminous, coextensive, and coincident. The power is con-

current; that is, it may be given different manifestations directed to the accomplishment of the same general purpose, provided they are not in immediate and hostile collision one with the other. In instances of such collision the state legislation must yield.

"We are of opinion that the word 'concurrent' in this connection means a power continuously existing for efficacious ends to be exerted in support of the main object of the amendment and making contribution to the same general aim according to the needs of the state, even though Congress also has exerted the power reposed in it by the amendment by enacting enforcing legislation operative throughout the extent of its territory. Legislation by the states need not be identical with that of Congress. It cannot authorize that which is forbidden by Congress. But the states need not denounce every act committed within their boundaries which is included within the inhibition of the Volstead Act, nor provide the same penalties therefor. It is conceivable also that a state may forbid under penalty acts not prohibited by the act of Congress. The concurrent power of the states may differ in means adopted, provided it is directed to the enforcement of the amendment. Legislation by the several states appropriately designed to enforce the absolute prohibition declared by the Eighteenth Amendment is not void or inoperative simply because Congress, in performance of the duty cast upon it by that amendment, has defined and prohibited beverages and has established regulations and penalties concerning them. State statutes, rationally adapted to putting into execution the inexorable mandate against the sale of intoxicating liquors for beverage contained in section 1 of the amendment by different definitions, regulations, and penalties from those contained in the Volstead Act, and not in conflict with the terms of the Volstead Act, but in harmony therewith, are valid. Existing laws of that character are not suspended or superseded by the act of Congress. The fact that Congress has enacted legislation covering in general the field of national prohi-

bition does not exclude the operation of appropriate state legislation directed to the enforcement by different means of prohibition within the territory of the state.

"The power thus reserved to the states must be put forth in aid of the enforcement, and not for the obstruction, of the dominant purpose of the amendment. It must not be in direct conflict with the act of Congress in the same field. Subject to those limitations growing out of the nature of our dual system of government, the power of the states is constant, vital, effective, and susceptible of continuous exercise. We think that these results follow from the words of the amendment, from the implications of conclusions 8 and 9 of the opinion in *Rhode Island* v. *Palmer,* and from the other decisions to which reference has been made."

Again, the case of *Jones* v. *Hicks,* 104 S. E. 771, recently decided by the supreme court of Georgia, is one which, upon its facts, exactly parallels the instant case, and there the court uses the following language:

" 'Concurrent power' does not mean 'concurrent legislation,' and concurrent 'power' to enforce is quite a different thing from 'concurrent enforcement.' 'The words "concurrent power" in that section do not mean "joint power," or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several states or any of them; nor do they mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.' 'Appropriate legislation' by the Congress or the states, as employed in section 2, must be "to enforce,' and not to 'defeat or thwart.' . . .

"It may be suggested that concurrent power to enforce may result in one being twice put in jeopardy for the same offense, and that, if each of the forty-eight states retains the sovereign power to enforce the amendment, a lack of uniformity in the punishments may result. These questions likewise were thoroughly considered by the Congress,

as shown by the debates. The constitutional inhibition against being twice put in jeopardy for the same offense was also considered in *State* v. *Antonio, supra,* and, as suggested by the deliberations in Congress, it was, said that the plea of *autrefois acquit* and *autrefois convict* would doubtless be applicable. We are not, however, confronted with that question at present. The lack of uniformity, it may be suggested, will be no greater than did obtain throughout all of the states prior to the ratification of the Eighteenth Amendment, where prohibition as to intoxicating liquors existed. Indeed, it may be said that this lack of uniformity obtains in the same state, as scarcely any two judges agreed exactly on a schedule of punishments; the statute having allowed a wide margin within which legal punishment might be inflicted. Under the terms of the Tenth Amendment to the Constitution of the United States, as universally construed, the states, prior to the ratification of the Eighteenth Amendment, possessed the exclusive power over this subject; therefore, when they delegated to the United States the 'concurrent, power' to enforce the amendment, they delegated only a part of their sovereign power over the subject. They parted with none of their own power 'to enforce' prohibition within their own sphere of action. The amendment and legislation thereunder by the Congress does not impair the integrity of any existing state statute to enforce prohibition, nor can it interfere with the enactment of any future legislation by the states for that purpose. From a consideration of the question as above presented, we reject the view that the legislation of Congress will supersede and abrogate the laws of the state which are appropriate for the enforcement of the amendment. We conclude that the power of Congress and of the state is equal and may be exercised by the several states for the purpose of enforcement concurrently within their legitimate constitutional spheres. *Ex parte Guerra* (Vt.), 110 Atl. 224, and authorities cited. The first section of the amendment is in no way affected or

qualified by the words "concurrent power,' found in the second section."

In *City of Shreveport* v. *Marx,* 86 So. 602, the supreme court of Louisiana says:

"It follows that, unless there be some conflict in the act of Congress with that of the state, the article in question itself affords a complete answer to the contention since state legislation would only have to yield to that of Congress because of the paramount authority of the latter in enforcing the federal Constitution. The purpose both of the amendment and the Volstead Act was and is the enforcing of prohibition, and only such legislation as might tend to defeat that purpose would produce such a conflict; while, on the other hand, any law which had the effect of aiding in its accomplishment could not be said to impede either amendment or statute, although the state statute might provide additional or identical means to the common end; otherwise the clause giving concurrent power to the states to enforce the amendment would be meaningless. It is true that the Act No. 8 of 1915 was in force when the Eighteenth Amendment and the Volstead Act became effective, but nothing therein has been pointed out, nor have we been able to find anything in the state law with which they conflict."

See, also, *Ex parte Guerra* (Vt.), 110 Atl. 224; *Ex parte Ramsey* (D. C.), 265 Fed. 950.

We conclude, therefore, that chapter 189 of the Laws of 1918, prohibiting the manufacture or possession of intoxicating liquors within the state of Mississippi, has not been abrogated or suspended by the National Prohibition Act, and that the jurisdiction of the state courts to enforce the provisions of the act is in no way affected thereby. It follows that the action of the court below in overruling the demurrer to the affidavit was correct, and that the judgment will be affirmed.

*Affirmed.*