# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT

---

In re Antonio Guerra.

Special Term at St. Johnsbury, April, 1920.

Present: Watson, C. J., Powers, Taylor, Miles, and Slack, JJ.

Opinion filed May 8, 1920.

*War Prohibition Act—Intoxicating Liquors—Police Powers—
Power of Congress to Enact—Power of States to Enact—
When State Law Yields to Act of Congress—State Liquor
Law Not Affected by War Prohibition Act—Same Act May
Constitute Offence Against United States and State.*

1. The provision of U. S. Comp. Stat. § 1233, that exclusive jurisdiction of all crimes and offences cognizable under authority of the United States, unless otherwise provided for, is vested in the courts thereof, was not affected by the War Prohibition Act, approved November 21, 1918.

2. In enforcing G. L. 6558, prohibiting the unlicensed traffic in intoxicating liquor, the State acts within the sphere of a power expressly reserved to it, and not under an implied authority to exercise a power delegated to Congress by the Federal Constitution until Congress shall see fit to exert its paramount authority.

3. The State may exercise any power possessed by it prior to the adoption of the Federal Constitution unless such exercise is prohibited thereby, or interferes with the exercise of some power delegated to the United States.

4.  Congress has no general power to enact police regulations operative within the territorial limits of a state; that power having been left with the individual states, and it cannot be taken from them, either wholly or in part.

5.  The exercise of the police powers by the State is unqualified and exclusive, so long as its regulations do not invade, obstruct, or impede the exercise of any authority confided to the nation by the Federal Constitution, or deprive a citizen of rights guaranteed to him thereunder.

6.  The police power of the State is but another name for the power of government; it is inherent in the State and is not a grant derived from or under a written Constitution; it is so essential that the State cannot divest itself of its right or duty in respect of its full exercise, nor can the Federal Government interfere in that exercise except by virtue of some Consitutional authority.

7.  Subject to Constitutional limitations, the Legislature, in the exercise of the police power, may pass measures for the general welfare of the State, and is itself the judge of the necessity or expediency of the means adopted.

8.  A state law enacted under any of the reserved powers is not to be set aside as inconsistent with an act of Congress unless there is actual repugnancy, or unless Congress has at least manifested a purpose to exercise its paramount authority over the subject.

9.  A state statute prohibiting an act as a police measure is not invalidated by an act of Congress prohibiting the same act as a war measure if the former can be upheld and enforced without obstructing or embarrassing the execution of the latter.

10. Though a state police regulation must yield to a valid act of Congress, it yields only when and to the extent that its enforcement conflicts therewith or with the exercise of rights conferred, or the discharge of duties enjoined, by the paramount act, and to the extent that they are in harmony, the acts are concurrent, the one supplementing the other.

11. G. L. 6558, was not suspended or abrogated by the passage of the War Prohibition Act; the express reservation in the act to the states of the exercise of their police powers not being necessary.

12. The same act may constitute a criminal offence equally against the United States and the State, subjecting the guilty party to

punishment under the laws of each, provided the act is one over which both sovereignties have jurisdiction.

PETITION for writ of *habeas corpus* brought to the Supreme Court for Washington County, and heard on the facts set forth in the petition. The opinion states the case.

*Richard A. Hoar* and *Alland G. Fay* for the relator.

Congress cannot confer jurisdiction in criminal offences or penal laws of the United States upon state courts. *Huber* v. *Reily,* 53 Pa. St. 112; *State* v. *McBride,* (S. C.) 1 Rice 400; *Davison* v. *Champion,* 7 Conn. 244; *Houston* v. *Moore,* 5 Wheat. 1; *Robertson* v. *Baldwin,* 165 U. S. 275; *People* v. *Fonda,* 62 Mich. 401; *State* v. *Pike,* 15 N. H. 83; *People* v. *Kelly,* 38 Cal. 145; *Commonwealth* v. *Kitchen,* 141 Ky. 655.

*Earl R. Davis,* State's Attorney, and *Fred B. Thomas* for the State.

TAYLOR, J. The relator was convicted in the city court of Montpelier, December 31, 1919, on a complaint charging that at a time and place named he did keep and expose for sale intoxicating liquor with intent to sell and furnish the same without authority, contrary to the form of the statute, etc. He was sentenced to the House of Correction, where he is now imprisoned, and brings this proceeding to test the legality of his conviction and imprisonment. On the trial the relator objected that the court was without jurisdiction in the premises, for that the statute upon which the complaint was founded was suspended or abrogated by the passage of an act of Congress regulating the traffic in intoxicating liquors, which act was and is the supreme law of the land, and that the courts of the United States had the sole jurisdiction of offences thereunder. The act of Congress referred to is the so-called War Prohibition Act, approved November 21, 1918, and was in force when the offence was committed for which the relator was tried, as well as at the time of his trial and conviction. The claim that he is illegally imprisoned is based solely upon the contention that the trial court was without jurisdiction of the offence charged in the complaint. It is argued that the act of Congress relating to the manufacture

and sale of intoxicating liquor superseded, or for the time being suspended, the State law regulating the traffic in intoxicating liquors, leaving the state courts without power or authority in the premises.

[1]   It is not claimed, nor could it well be, that the court was acting under authority of the Federal statute.   Exclusive jurisdiction of all crimes and offences cognizable under authority of the United States, unless otherwise provided, is vested in the courts thereof.   U. S. Comp. Stat. § 1233; *Houston* v. *Moore*, 5 Wheat. 1. 5 L. ed. 19.   This general provision is left undisturbed by the War Prohibition Act.   The controlling question then is whether the statute of the State (G. L. 6558), prohibiting the unlicensed traffic in intoxicating liquors, ceased to be of force because of the subsequent act of Congress prohibiting throughout the United States the manufacture and sale of intoxicating liquors for a certain period, covering the time in question here. It should be observed at the outset that the question is not affected by the 18th Amendment of the Constitution, nor by the provisions of the National Prohibition Act so far as it regulates the traffic in intoxicating liquors under the amendment, both having become effective at a later date.   The questions discussed will be treated without any reference to the act or amendment, or the possibility of their being affected thereby.

The Act of November 21, 1918, was a general war measure. Among its provisions was the so-called war-time prohibition. It provides in substance that after June 30, 1919, until the conclusion of the then present war and thereafter until the termination of demobilization, the date of which is to be determined and proclaimed by the President of the United States, it shall be unlawful to sell for beverage purposes any distilled spirits, beer, wine, or other intoxicating malt or vinous liquor, except for export, and that after May 1, 1919, during the same time, no grains, cereals, fruits, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes.   The act provides a penalty for the violation of its provisions.   The purpose of this legislation, expressly declared in the act, is to conserve the man power of the nation and to increase efficiency in the production of arms, munitions, ships, food, and clothing for the army and navy. This act is one of a series of war-time measures enacted for the same definite purpose, was not aimed at the traffic as a social evil,

and is temporary in duration, expiring with the emergency which called it into being. Its validity has been called in question on several grounds, but upheld as a proper exercise of the war powers granted to the United States by the Constitution. See *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146, 64 L. ed. 194, 40 Sup. Ct. 106; *Ruppert* v. *Caffey*, 251 U. S. 264, 64 L. ed. 260, 40 Sup. Ct. 141; *United States* v. *Standard Brewery*, 251 U. S. 210, 64 L. ed. 229, 40 Sup. Ct. 139. We are asked to hold that such an act passed for such a purpose, of necessity suspends the operation of all state legislation on the subject, whatever its character and purpose. Numerous decisions of the Supreme Court of the United States are relied upon as supporting the relator's position; but on careful examination they are not found to be in point on the question raised by this proceeding.

[2] It is insisted that, where Congress has legislated on a subject, state statutes on the same subject cannot be enforced, but are abrogated by such action. Cases are cited in support of the claim which hold that, where power is delegated to Congress over a certain subject, although until Congress exercises that power the states have the right to legislate thereon, yet when Congress acts, and thus assumes jurisdiction, its control becomes paramount and exclusive. But, as we shall see presently, this principle has no application here. It is indisputably settled that under the Federal Constitution the authority of Congress is paramount when exerted as to subjects concerning which it has the power to control. The general principle on which this line of cases is based is tersely stated in the North Dakota Rate Case, 250 U. S. 135, 63 L. ed. 897, 39 Sup. Ct. 502, in an opinion by Chief Justice White. It is said that, although authority to regulate within a given sphere may exist in both the United States and in the states, where the former calls into play constitutional authority within such general sphere, the necessary effect is that to the extent that any conflict arises the state power is limited, since in such case that which is paramount necessarily controls that which is subordinate. However, we shall see as we proceed that a wholly different question is presented in the case at bar. Here the State is acting within the sphere of a power expressly reserved to it, and not under an implied authority to exercise a power delegated to Congress until it shall see fit to exert its paramount authority.

Nor are the cases in point that are cited by the relator bearing upon the question of state jurisdiction over crimes and offences, as to which Congress has power to act, but has not acted, or as to which Congress, having acted, has not granted the state courts concurrent jurisdiction. It is doubtless true, as claimed, that in certain cases, as for example offences affecting national banks, national currency, interstate commerce, or other subjects committed to Federal control, when Congress exercises its delegated authority and penalizes the act, the continuance of state authority or the jurisdiction of the state courts in the premises depends upon whether, in the particular case, provision is made for concurrent jurisdiction. A somewhat exhaustive discussion of this and kindred questions will be found in *State* v. *Randall,* 2 Aikens 89. But it is at once apparent that the cases relied upon have no relation to a situation where the act of Congress, though valid, encroaches upon a jurisdiction expressly reserved by the Constitution to the states. We do not take the time to notice such cases further.

The real question at issue is this: Is the general statute of the State prohibiting the traffic in intoxicating liquors in no license territory within this State superseded by the temporary act of Congress forbidding the manufacture and sale of such liquors for beverage purposes throughout the United States? Though questions involving conflict between Federal and state authority respecting the subject-matter have recently engaged the attention of the courts, we are not aware that this precise question has been decided in a court of last resort. It is urged that the exigency of the times demanded the enactment of a national prohibitory law, uniform throughout the country and under national control, and that, Congress having passed an act of general application without reserving to the states concurrent jurisdiction, the power of the state and the jurisdiction of the state courts ceased and all state laws upon the subject were suspended. A brief "recurrence to fundamental principles" will be helpful to a correct solution of the question.

[3] Prior to the formation of the Federal Constitution the states were sovereign in the full, absolute sense of the term. *Thurlow* v. *Massachusetts*, 5 How. 586, 12 L. ed. 293. By the compact which formed the Union, certain enumerated powers were surrendered to the Federal Government, among which were the war powers expressly granted by Article 1, § 8, of the Consti-

tution. The states remain sovereign within their separate spheres as to all powers not delegated to the General Government or prohibited to the states. *New Hampshire* v. *Louisiana,* 108 U. S. 76, 27 L. ed. 656, 2 Sup. Ct. 176. Subject to these restrictions each state is supreme, and possesses the exclusive right of regulating its own internal affairs, and in all such matters is sovereign so long as it does not conflict with the Federal Constitution. In general, the states may exercise any power possessed by them prior to the adoption of the Constitution, unless the exercise of such power is expressly or by necessary implication prohibited thereby, or interferes with the exercise of some power delegated to the United States. 36 Cyc. 828. Under our system of government the powers of sovereignty are divided between the Federal and state governments. They are each sovereign with respect to the rights committed to it, and neither sovereign with respect to the rights committed to the other. *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. ed. 579. In a word, the Constitution contemplates "an indestructible union of indestructible states." *Texas* v. *White,* 7 Wall. 700, 725, 19 L. ed. 227, 237. It has been well said: "It was a bold, wise, and successful attempt to place the people under two distinct governments, each sovereign and independent within its own sphere of action, and dividing the jurisdiction between them, not by territorial limits, and not by the relation of superior or subordinate, but classifying the subjects of government and designating those over which each has entire and independent jurisdiction." Opinion of Justices, 14 Gray (Mass.) 614, 616.

[4, 5] Within the scope of its enumerated powers the United States is a national sovereignty, and the Constitution and laws of the United States are the supreme law of the land. 39 Cyc. 694. But Congress has no general power to enact police regulations operative within the territorial limits of a state. That power has been left with the individual states, and cannot be taken from them, either wholly or in part. *United States* v. *DeWitt,* 9 Wall. 41, 19 L. ed. 593; *United States* v. *Reese,* 92 U. S. 214, 23 L. ed. 563; *United States* v. *Cruikshank,* 92 U. S. 542, 23 L. ed. 588. In this field the power of the state is unqualified and exclusive so long as its regulations do not invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has confided to the nation, or deprive a citizen of rights guaranteed to him there-

under. *New York* v. *Miln*, 11 Pet. 102, 9 L. ed. 648; *United States* v. *Cruikshank, supra;. Butcher's Union, etc.* v. *Crescent City, etc., Co.,* 111 U. S. 746, 28 L. ed. 585; Cooley on Con. Lim. (7th ed.) 831; 6 R. C. L. 191; 12 C. J. 910.

[6, 7] Referring to the police powers of a state, it has been said that they are nothing more or less than the powers of govern-. ment inherent in every sovereignty. License Cases, 5 How. 583, 12 L. ed. 291. Indeed, the police power is but another name for the power of government. *Mutual Loan Co.* v.· *Martell,* 222 U. S. 225, 56 L. ed. 175, 32 Sup. Ct. 74, Ann. Cas. 1913 B, 529. It is an attribute of sovereignty, or rather it is sovereignty itself. *Bacon* v. *B. & M. R. R.,* 83 Vt. 421, 451, 76 Atl. 128. It is inherent in the states of the Union and is not a grant derived from or under a written constitution. *People* v. *Johnson,* 288 Ill. 442, 123 N. E. 543, 4 A. L. R. 1535; 6 R. C. L. 183. The power is so essential to the welfare of the people that it has been held to be impossible for a state to divest itself of its right and duty in respect of the full exercise thereof, and as well that the Federal Government cannot interfere in the exercise of that right and duty, except by virtue of some authority derived from the Constitution. *Sabre* v. *Rutland R. Co.,* 86 Vt. 347, 364, 85 Atl. 693, Ann. Cas. 1915 C, 1269, citing numerous decisions of the Supreme Court of the United States. Subject to constitutional limitations, a state legislature is authorized to pass measures for the general welfare of the people of the state in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted. *New York ex rel. Silz* v. *Hesterberg,* 211 U. S. 31, 53 L. ed. 75, 79, 29 Sup. Ct. 10; *Purity Extract, etc., Co.* v. *Lynch,* 226 U. S. 192, 57 L. ed. 184, 187, 33 Sup. Ct. 44.

The limitation of state and Federal authority, and the relative force of their respective legislation, have engaged the attention of the Supreme Court of the United States more frequently, perhaps, than any other subject. For the sake of brevity we shall notice only a few of the decisions of that Court which bear directly upon the question for decision. In *Houston* v. *Moore,* 5 Wheat. 1, 48, 5 L. ed. 19, 30, speaking of the relative powers of the states and the Federal Government, Mr. Justice Story says: "The sovereignty of a state, in the exercise of its legislation, is not to be impaired, unless it be clear that it has transcended its legitimate authority;. nor ought any power to be sought, much less to be adjudged, in favor of the United States, unless it be

clearly within the reach of its constitutional charter. Sitting here, we are not at liberty to add one jot of power to the national government, beyond what the people have granted by the Constitution; and, on the other hand, we are bound to support that Constitution as it stands, and to give a fair and rational scope to all the powers which it clearly contains.'' Referring to situations in which the state and Federal Governments may have concurrent authority though not expressly conferred, he continues: ''The Constitution containing a grant of powers, in many instances similar to those already existing in the state governments, and some of these being of vital importance to state authority and state legislation, it is not to be admitted that a mere grant of such powers in affirmative terms to Congress does *per se* transfer an exclusive sovereignty on such subjects to the latter. On the contrary, a reasonable interpretation of that instrument necessarily leads to the conclusion that the powers so granted are never exclusive of similar powers existing in the states, unless where the Constitution has expressly, in terms, given an exclusive power to Congress, or the exercise of a like power is prohibited to the states, or there is a direct repugnancy or incompatibility in the exercise of it by the states.''

It is said in *New York* v. *Miln,* 11 Pet. 102, 137, 9 L. ed. 648, 662, that while a state is acting within the legitimate scope of its power as to the end to be attained, it may use any appropriate means whatsoever to that end, although they may be the same, or so nearly the same, as scarcely to be distinguishable from those adopted by Congress acting under a different power, subject only to the limitation that in the event of collision the law of the state must yield to the law of Congress, if valid. This statement was approved by the Court in *Keller* v. *United States,* 213 U. S. 139, 145, 53 L. ed. 737, 739, 29 Sup. Ct. 470, 16 Ann. Cas. 1066; Mr. Justice Brewer, who wrote the opinion, remarking: ''Doubtless it not infrequently happens that the same act may be referable to the power of the state, as well as that of Congress. If there be collision in such a case, the superior authority of Congress prevails.''

In *Gibbons* v. *Ogden,* 9 Wheat. 1, 203, 6 L. ed. 23, Chief Justice Marshall, speaking of state inspection laws, quarantine laws, etc., over which no general power is granted to Congress, leaving them subject to state legislation, says: ''If the legislative power of the Union can reach them, it must be for national

purposes; it must be, where the power is expressly given for a special purpose, or is clearly incidental to some power which is. expressly given. It is obvious that the government of the Union, in the exercise of its express powers, that, for example, of regulating commerce with foreign nations and among the states, may use means that may also be employed by a state, in the exercise of its acknowledged power; that, for example, of regulating commerce within the state. If Congress license vessels to sail from one port to another in the same state, the act is supposed to be, necessarily, incidental to the power expressly granted to Congress, and implies no claim of a direct power to regulate the purely internal commerce of the state, or to act directly on its system of police. So, if a state, in passing laws on subjects acknowledged to be within its control, and with a view to those objects, shall adopt a measure of the same character with one which Congress may adopt, it does not derive its authority from the particular power which has been granted, but from some other, which remains with the state, and may be exercised by the same means.'' Upon this principle it has been repeatedly held that laws passed by the states in the exercise of their police power, not in conflict with the laws of Congress relating to interstate commerce, are nevertheless valid, though indirectly or remotely affecting that subject. Such laws are held invalid only in case of conflict or when they directly interfere with interstate commerce as such. *New York ex rel. Silz* v. *Hesterberg, supra,* and cases there collected.

[8] The framers of the Constitution of the United States provided for the contingency arising when a law passed by a state in the exercise of its acknowledged sovereignty comes in conflict with a law passed by Congress in pursuance of power delegated by the Constitution by giving supremacy to the latter. *Gibbons* v. *Ogden, supra; Brown* v. *State of Maryland,* 12 Wheat. page 449, 6 L. ed. 678. But in the application of this principle, in a case where the state law is only an exercise of a reserved power, the repugnance or conflict must be direct and positive, so that the two acts cannot be reconciled or consistently stand together. *Sinnot* v. *Davenport,* 22 How. 227, 16 L. ed. 243, 247. Mr. Justice Hughes, speaking for the Court in *Savage* v. *Jones,* 225 U. S. 501, 535, 56 L. ed. 1182, 1196, 32 Sup. Ct. 715, quotes the above as the settled rule and says that, when the question is whether a Federal act overrides a state law, the entire scheme

of the statute must be considered. Other cases are to. the same effect. · *Missouri, etc., R. Co.* v. *Harris,* 234 U. S. 412, 58 L. ed. 1377, 34 Sup. Ct. 790, L. R. A. 1915 E, 942, recognizes as established the rule that a state law enacted under any of the reserved powers—especially if under the police power—is not to be set aside as inconsistent with an act of Congress, unless there is actual repugnancy, or unless Congress has at least manifested a purpose to exercise its paramount authority over the subject, saying: ''The rule rests upon fundamental grounds that should not be disregarded.'' In *Reid* v. *Colorado,* 187 U. S. 137, 148, 47 L. ed. 108, 114, 23 Sup. Ct. 92, the Court say: ''It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested.'' In *Moore* v. *Illinois,* 14 How. 14, 14 L. ed. 306, it was held that a statute of the state penalizing the harboring of a fugitive slave was valid within the police power, notwithstanding the fact that a Federal statute penalized the same act, as the former in its operation did not conflict with the latter.

The discussion in *Hamilton* v. *Kentucky Distilleries, etc., Co., supra,* would seem to forecast a holding by the Supreme Court that the War Prohibition Act did not displace local statutes, but, on the contrary, supplemented them, to the extent that the statutes of the several states prohibit the manufacture and sale of intoxicating liquors for beverage purposes. The Court said: ''That the United States lacks the police power, and that this was reserved to the states by the Tenth Amendment, is true. But it is none the less true that, when the United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose.'' Among the cases cited are the Lottery Case (*Champion* v. *Ames*), 188 U. S. 321, 357, 47 L. ed. 492, 501, 23 Sup. Ct. 321; the White Slave Case (*Hoke* v. *United States*), 227 U. S. 308, 323, 57 L. ed. 523, 527, 33 Sup. Ct. 281, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913 E, 905.

[9] In view of these authoritative holdings it is not necessary to look further; but we note in passing that it has recently been held by the Supreme Court of Oregon that the jurisdiction of the state courts of an offence against the state is not ousted

by the fact that the same act constitutes an offence under the laws of the United States. *State* v. *Frazier,* (Or.) 180 Pac. 520. The authorities cited furnish a test by which to determine whether a state statute prohibiting an act as a police measure is invalidated by an act of Congress prohibiting the same act as a war measure. It is this: Can the former be upheld and enforced without obstructing or embarrassing the execution of the latter? If so, there is no invalidating conflict.

[10] In some of the war-time legislation Congress has expressly reserved to the states the exercise of police powers, and it is argued therefrom that the absence of such reservations in the War Prohibition Act indicates the intention of the Federal Government to occupy the whole field, and thus suspend the operation of state legislation on the subject. But there was no need for Congress to authorize the continued exercise by the states of a power that had not been surrendered, and of which, as we have seen, they could by no means be deprived. *South Carolina* v. *United States,* 199 U. S. 437, 50 L. ed. 261, 26 Sup. Ct. 110, 4 Ann. Cas. 737; *Keller* v. *United States,* 213 U. S. 138, 53 L. ed. 737, 29 Sup. Ct. 470, 16 Ann. Cas. 1066. The cases cited support the following conclusions: In enacting war prohibition Congress was without authority to exercise and did not assume to exercise the police power. The right and duty to legislate in this field for the general welfare remained in the states unimpaired. Congress was at liberty to employ as a war measure the same means to accomplish its object as the state was using to accomplish an independent object. The mere fact that the Federal act is similar to the state law in some of its provisions does not invalidate the latter. To have this effect, the state law must in operation interfere with the enforcement of the Federal act. Though a state police regulation must yield to a valid act of Congress, it yields only when and to the extent that its enforcement conflicts therewith, or with the exercise of rights conferred, or the discharge of duties enjoined by the paramount act. To the extent that the two are in harmony the acts are concurrent, the one supplementing the other. It follows that, as the enforcement of the prohibitory features of the state law does not obstruct or embarrass the execution of the act of Congress, there is no invalidating conflict.

[11, 12] It is no objection to the concurrent validity of the two statutes that both penalize the same act, for it has been re-

peatedly held that the same act may constitute a criminal offence equally against the United States and the state, subjecting the guilty party to punishment under the laws of each, provided the act is one over which both sovereignties have jurisdiction. *Cross* v. *North Carolina*, 132 U. S. 131, 33 L. ed. 287, 290, 10 Sup. Ct. 47; *Crossley* v. *California*, 168 U. S. 640, 42 L. ed. 610, 18 Sup. Ct. 242; *Southern R. Co.* v. *Railroad Comm'rs*, 236 U. S. 439, 59 L. ed. 661, 35 Sup. Ct. 304. It is unnecessary for present purposes to decide whether the acquittal or conviction of a violation of the Federal statute would bar a prosecution under the statute of the state, or *vice versa*. The authorities are not in harmony upon this question. This Court said in *State* v. *Randall*, 2 Aikens 89, 100, that such would be the result; but the question was not involved in the decision. It was recently held in *United States* v. *Porria*, (D. C.) 255 Fed. 172, that a conviction in a state court for receiving stolen property is a bar to a prosecution under a Federal statute for taking in possession such property, a foreign shipment, the same having been stolen, as the character and degree of proof was the same. On the other hand, it was held in *United States* v. *Casey*, (D. C.) 247 Fed. 362, that a conviction under a state statute for maintaining a brothel located so near a military post as to fall within the prohibited zone prescribed by the Secretary of War under the Selective Service Act did not prevent a conviction under such act. We have not overlooked the fact that the offence for which the relator was convicted, *viz.*, keeping intoxicating liquors with intent to sell, is distinct from the offence of selling prohibited by the act of Congress. This would furnish an additional and perhaps sufficient reason for upholding the conviction. However, we have thought best to dispose of the question on the grounds argued.

*It is adjudged that the relator is not unlawfully imprisoned, and he is remanded to the House of Correction, whence he was taken, and his complaint is dismissed.*