THE STATE OF CONNECTICUT *vs.* JAMES CERIANI.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The concurrent power given by the Eighteenth or Prohibition Amend-
ment of the United States Constitution to the Congress and the
several States to enforce its provisions by appropriate legislation
is a power conferred by this Amendment existing continuously in
Federal and State legislature, and equal in each, and by separate
and independent action co-operating for the enforcement, through
appropriate legislation, of the prohibitions of the Amendment; but
when the Federal and State Acts conflict, then, in view of Article
Sixth of the Constitution, making the Constitution and the law
made in pursuance thereof the Supreme law of the land, the Federal
Act shall prevail.

This Amendment does not take from the States the police power re-
served to them by the Tenth Amendment, but confers upon Con-
gress the power to accomplish the same or similar results thereto-
fore accomplished by State legislation in the exercise of such
power; and a State may still exercise its police power in the
regulation and restriction of the liquor traffic unless its exercise
of that power conflicts with the constitutional grant made by the
Amendment or with the Act of Congress passed in enforcement
of the grant.

The National Prohibition Act (41 U. S. Stat. at Large, p. 305), passed
to enforce the Amendment and which prohibited the sale of intoxi-
cating liquor containing half of one per cent or more of alcohol,
invalidated our statutes so far as they authorized the issuance of
licenses for the sale of such liquor, but did not invalidate the
penalties for such sales without a license; and consequently one
who sells such liquor may be convicted under General Statutes,
§ 2790, providing that a sale of intoxicating liquor without a
license shall subject the violator to the penalties provided in
General Statutes, § 2814.

Such a seller may not rely on the protection of General Statutes, § 2792,
providing that a licensed dealer who has filed his application with
the county commissioners for a renewal of his license shall not be
convicted of selling without a license pending the decision upon
his application, since so far as it applies to sales of intoxicating
liquor with an alcoholic content of one half of one per cent or
more it is contrary to the prohibitions of the Amendment and the
National Act, and hence is now to that extent invalid.

The State *v.* Ceriani.

Sales of intoxicating liquors with an alcoholic content of less than one
half of one per cent are not prohibited by the National Act and
licenses may be issued for such sales in accordance with our statutes.
Whether conviction in either the Federal jurisdiction under the National
Act or in the State jurisdiction under State laws is a bar to a
prosecution in the other, *quære.*

Argued January 20th—decided April 20th, 1921.

INFORMATION for selling intoxicating liquor without
a license, brought to the Criminal Court of Common
Pleas in New Haven County where a demurrer to the
information was overruled and the cause was tried
to the jury before *Munger, Acting-Judge;* verdict and
judgment of guilty, and appeal by the accused. *No
error.*

*Walter J. Walsh,* with whom was *David M. Reilly*
and *Stanley Dunn,* for the appellant (the accused).

*Edwin S. Pickett,* Prosecuting Attorney, for the
appellee (the State).

WHEELER, C. J.   The accused was informed against,
tried, and found guilty of a violation of § 2790 of the
General Statutes.   By the undisputed facts he had
sold without a license intoxicating liquor whose alco-
holic content exceeded one half of one per cent.   His
defense was that prior to the first Monday of November,
1919, he was a licensed dealer to sell intoxicating
liquor, and on October 28th, 1919, he had made due
application to the county commissioners for a renewal
of such license, and therefore, by virtue of § 2792 of
the General Statutes, he could not be found guilty of a
violation of § 2790.   On the date of these sales the
county commissioners had not passed upon the accused's
application.   The State conceded the facts supporting
this defense.

The overruling of the demurrer, the denying of the motion in arrest of judgment, the refusal of the requests to charge, and the charge as complained of, each contain the two points which form the basis of the appeal as pressed here: (1) that at the time of the offense alleged § 2790, providing that a sale of intoxicating liquor without a license should subject the violator to the penalties provided by § 2814, was not in force; and (2) that if the accused were found to have been a licensed dealer, and had filed his application for a renewal of his license, he would be justified in making the sale as charged, by virtue of § 2792, prior to the issue of the renewal.

The claim of the accused is that § 2790 is superseded by the National Prohibition Act (41 U. S. Stat. at Large, p. 305), and hence he cannot be found guilty of violating its provisions. This Act was passed by Congress as appropriate legislation to enforce the prohibitions of the Eighteenth Amendment under the second section thereof. It comprehends the entire range of criminal liability for the manufacture, sale, and possession of intoxicating liquor except as authorized by the Act. It covers the greater part of the field covered by our statutory law upon the same subject.

There is this difference between the Federal and State Acts: The purpose of the Federal is the enforcement of the purpose of the Amendment that all liquor treated by the Act as intoxicating should be banished. Its purpose is prohibition. The purpose of our State Act is the restriction and regulation of the traffic in intoxicating liquor.

In the enforcement of the powers conferred by the Eighteenth Amendment Congress may invade the field of the police power of the State, and its legislation may accomplish the same or similar purposes

theretofore accomplished by State legislation. This results, not because the police power of the State is superseded, but because the exercise of the constitutional power has taken Congress into the field formerly occupied exclusively by State legislation. This does not mean that the police power of the State, in whole or in part, has been taken from the State, nor that the police power has been vested in the United States. The United States may not exercise the police power as such within the State, for it "lacks the police power." This was reserved to the States by the Tenth Amendment; the State does not act under the police power upon an implied authority to exercise a power delegated to Congress until such time as Congress shall see fit to act. *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 147, 40 Sup. Ct. 106; *In re Guerra*, 94 Vt. 1, 110 Atl. 224. The National Prohibition Act has not deprived our State of its right to exercise its police power in the regulation and restriction of the liquor traffic.

Section 1 of the Eighteenth Amendment * "invalidates every legislative act—whether by Congress, by a State legislature, or by a territorial assembly—which authorizes or sanctions what the sections prohibit." *National Prohibition Cases*, 253 U. S. 350, 40 Sup. Ct. 486. Unless the State's exercise of that power conflicts with the constitutional grant or with the Act of Congress passed in enforcement of the grant, its authority to act within its police power is supreme.

---

* "Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." 40 U. S. Stat. at Large, p. 1050.

All of the various provisions of the several chapters of our statute regulative of intoxicating liquors, which sanction what the Eighteenth Amendment prohibits, are necessarily invalid; and all which are repugnant to, or in conflict with, the National Act, are by force of the Act invalidated.

The first section of the Amendment imposes a general prohibition against the manufacture, sale, or transportation of intoxicating liquors for beverage purposes. The second section unites National and State legislation in giving effect to the Amendment by appropriate legislation, and thus joins together all National and State administrative agencies for the common end—the enforcement of the prohibition of the first section. The second section provides the means for carrying into effect the first. Concurring opinion of Chief Justice White, in *National Prohibition Cases*, 253 U. S. 350, 40 Sup. Ct. 486.

What "concurrent power," in § 2, means, has occasioned very considerable discussion. Three constructions have been suggested, and each is a possible construction: (1) that it means joint power to Congress and the several States; (2) that it means a separate and independent power vested in each; (3) that it means a separate and independent power in each, but that such parts of the State Act as conflict with the Act of Congress must fall, since the National Act is the supreme law of the land. No additional construction of this term has been suggested, and no other seems permissible.

The United States Supreme Court in *National Prohibition Cases*, 253 U. S. 350, 40 Sup. Ct. 486, have decided that "concurrent power" does "not mean joint power, or require that legislation . . . by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor. . . that

the power . . . is divided between" them "along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs."

While the court has not gone further and expressly defined the meaning of "concurrent power," we think it necessarily follows from the decision that this power is not joint, that it is a separate and independent power which the Congress and the several States exercise in the enforcement of this Amendment. Each has the right to act separately and independently in aid of the Amendment. But neither can act in repugnance to it.

"Concurrent power" as used in this section, and when read in the light of the context and the purpose of the Amendment, must be held to mean a conferred power by this Amendment existing continuously in Federal and State legislature, and equal in each, and co-operating for the enforcement through appropriate legislation of the prohibitions of the Eighteenth Amendment. *Commonwealth* v. *Nickerson,* 236 Mass. 281, 128 N. E. 273.

Between the two points of view, that the power is separate and independent, or that it is separate and independent but that the Federal Act will supersede any State legislation inconsistent with it, we think the latter to be the better, and, indeed, the necessary view.

Article Sixth of the Federal Constitution must be construed in harmony with all parts of the Eighteenth Amendment. Section 2 of the Eighteenth Amendment gives to Congress and the several States equal authority to enforce this Amendment. But when the Federal and State Acts conflict, then Article Sixth—which provides that the "constitution, and the laws . . . which shall be made in pursuance thereof, . . . shall be the supreme law of the land"—makes the

Federal Act supreme in those particulars in which there is conflict. The Eighteenth Amendment and Article Sixth can be, and hence must be, construed in harmonious relation. *Warren* v. *Charlestown*, 68 Mass. (2 Gray) 84, 99. The rest of the State Act remains in force. *State ex rel. Stranahan* v. *District Court*, 58 Mont. 684, 688, 194 Pac. 308, 310.

Perhaps the difference in results would not be of great practical importance if either view prevailed. If the first view be accepted, then the more restrictive law would in practice prevail and the less restrictive be supplanted by it. But if the second view be accepted, the Act of Congress remains the supreme law of the land, and uniformity in the enforcement of this Amendment will obtain.

Legislation by the State must support the primary purpose of the Amendment, and cannot be repugnant to the Act of Congress. Appropriate legislation by a State need not cover all that the Act of Congress does. It may differ in its definition of intoxicating liquor and in the penalties it provides, and yet serve the purpose of helping to enforce the Amendment.

In the exercise of its police power the State may legislate for the enforcement of the Amendment by different means and methods which do tend to this end. Undoubtedly the power conferred upon the States of enforcing this Amendment by appropriate legislation, contemplated the passage of new legislation by the States to provide such enforcement. But this does not attempt to compel it, or to control the manner in which the State may effect this. It impairs no right theretofore existing in the State except that of acting in repugnance to the Amendment. It does not expressly require the passage of enforcing legislation, nor limit the power of the State to the newly-enacted legislation. It does not invalidate State legislation

which is not inconsistent with the Amendment or the National Prohibition Act.

Such State legislation, in existence when the Amendment became effective, if it may serve in the enforcement of the Amendment, is "appropriate legislation." This term, in the Eighteenth Amendment, was used in the same sense in which it was used in the Thirteenth and Fourteenth Amendments, and means such legislation as may make the Amendment fully effective and adapted to its fundamental purpose. *Ex parte Virginia*, 100 U. S. 339, 344; *United States* v. *Reese*, 92 U. S. 214, 218. The State may thus enforce this Amendment by appropriate legislation, newly enacted, or by existing legislation.

Our conclusion is that the remedies provided by our statutes for the restriction and control of the sale of intoxicating liquors still stand, except as to those provisions which are inconsistent with the National Prohibition Act, and those have been superseded by the supreme law of the land.

The courts which have passed upon this question have reached a like conclusion, that the Eighteenth Amendment has not superseded or suspended the State statute. *Commonwealth* v. *Nickerson*, 236 Mass. 281, 128 N. E. 273; *State ex rel. Stranahan* v. *District Court*, 58 Mont. 684, 688, 194 Pac. 308, 310; *Jones* v. *Hicks*, 150 Ga. 657, 104 S. E. 771; *United States* v. *Peterson*, 268 Fed. Rep. 864. The same view obtained in the construction given the Federal War-Time Prohibition Act (40 U. S. Stat. at Large, p. 1046 *et seq.*); *Wilson* v. *Board of Commissioners of Jersey City* (N. J. L. Rep.), 109 Atl. Rep. 364–365: *In re Guerra*, 94 Vt. 1, 110 Atl. 224.

The National Prohibition Act, among other things, provided that all alcoholic liquors containing one half of one per cent or more of alcohol were intoxicating

liquors, thus accepting the definition by which all liquor had been treated and taxed by the National government. If liability were dependent upon proof that the liquor sold is intoxicating, experience had shown that no effective enforcement of the Amendment could be had. *Ruppert* v. *Caffey*, 251 U. S. 264, 282, 283, 40 Sup. Ct. 141.

Our State statute penalized every sale of liquor for beverage without a license containing any percentage of alcohol. The Amendment, supplemented by the National Act, thus prohibited every sale of intoxicating liquor whose content contained one half of one per cent or more of alcohol. And hence no license could be issued for the sale of intoxicating liquor containing one half of one per cent or more of alcohol. And that part of our statute authorizing such sale upon the issuance of a license, being in direct conflict with the Federal law, was invalidated. But that part of the statute authorizing the issuance of a license for sales of liquor containing less than one half of one per cent does not conflict with the Federal law, and was not invalidated by it.

While the right to license sales of liquor containing one half of one per cent or more of alcohol was invalidated, the penalty for making such sales was not invalidated. Enforcement of the penalties of the State statute will help in the enforcement of the Amendment, and is not antagonistic to the National Act, and hence is "appropriate legislation" within the meaning of these words as used in § 2. The offense under National Act, or State, will be the same; the penalties differ. Whether conviction in one jurisdiction is a bar to a prosecution in the other for the same act, has been decided differently in different jurisdictions. We shall wait until we are called upon to decide the point, before expressing an opinion upon it.

Section 2792 of the General Statutes provides that a licensed dealer, who had filed his application for a renewal, shall not be convicted pending the decision upon his application. If. this section be in force in its entirety, then sales of intoxicating liquor could be made, although prohibited by the Amendment. And this shows clearly that so far forth as this statute would permit the licensed dealer to sell contrary to the prohibitions of the Amendment and of the National Act, it is invalidated.

As to sales of liquor containing less than one half of one per cent of alcohol it is valid, since such sales are not contrary to the National Act. The sales for which the accused was tried and found guilty were of intoxicating liquor whose alcoholic contents were in excess of one half of one per cent. The trial court properly charged that § 2790, which the accused was charged with having violated, was at that time in force, and that the fact that the accused had made application for a renewal of his license, which was pending for decision before the county commissioners, did not give him a right to make such sale.

There is no error.

In this opinion the other judges concurred.