## CLEVELAND (City), Plaintiff-Appellee v. PISKURA, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19486.   Decided February 28, 1944.

74

T. A. Burke, Cleveland, for plaintiff-appellee.

Stanton Addams, L. G. Bayer, Cleveland, for defendant-appellant.

Chester Bowles, Director Office of Price Administration, amicus curiae.

## OPINION

By SKEEL, J.

The Council of the City of Cleveland passed an ordinance making it a misdemeanor to sell goods that were subject to a ceiling price fixed under the authority of the United States of America, at a price in excess of such ceiling price.

Section 2207-2 of the ordinance which became effective June 8, 1943, provides:

"Whoever sells a commodity which is subject to a ceiling price fixed by or under the authority of the United States of America at a price in excess of such ceiling price so established, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than five hundred ($500.00) dollars, or imprisoned in the workhouse for not more than sixty (60) days, or both, for each offense."

The record discloses that the defendant was the proprietor of the Meadowbrook Market located at 9505 Denison Avenue in the City of Cleveland. The defendant was in the business of selling groceries and meats at retail. One Mrs. Stevenson went to the defendant's store on July 10th and was waited on by one of the defendant's employees. She asked for two pounds of beef stew and upon wrapping it, the clerk said: "Seventy-eight cents." Then Mrs. Stevenson asked what the price per pound was and he said "thirty-nine cents." The clerk marked down the price on the package, at Mrs. Steven-

son's request, as well as the number of meat ration points the transaction required. Sixteen meat ration points were given to the defendant's clerk, as well as seventy-eight cents in cash. The ceiling price list effective July 5th (plaintiff's exhibit 2) discloses that the highest price for beef under paragraph 3 headed "stews and other cuts" was for brisket (boneless), fresh or cured, thirty-four cents, and for "neck boneless" thirty-three cents per pound, and the ration points for both of these grades is shown by the chart (plaintiff's exhibit 4) effective July 4, 1943, to be eight points per pound.

The court found the defendant guilty.

It is contention of the defendant "that the City of Cleveland does not have the power to enact price control legislation. (2nd), that even though the City should be found to have the power during the present war emergency to control prices, the method adopted to accomplish such purpose by ordinance Sec. 2207-1 to 3 incl. in adopting the prices as established by Federal law as the basis of its control is unconstitutional and void.

(3), that such attempt to regulate prices by the City of Cleveland is unconstitutional because the provisions are different from and repugnant to the provisions of the Federal Law providing for Emergency Price Control and the legal rules adopted by the Office of Price Administration under the authority of such Federal Emergency Legislation in that the Federal Law requires that before one can be found guilty of violating the provisions of the Act he must be shown to have wilfully exceeded the price ceilings, while the city ordinance includes no such provision; and

(4), that the ordinance is unconstitutional because it attempts to include within its provisions by reference, rules and prices which are to be adopted by the Office of Price Administration after the effective date of the ordinance.

It will be helpful in deciding the legal questions here present to first determine the source of the power or authority by which the Congress enacted the Emergency Price Control legislation and also the source of the right of the City of Cleveland to pass its price control ordinance. There is no question but that the power of the Congress during time of war to stabilize prices and prevent inflation is to be found under the provisions of the Federal Constitution relating to war. Art. I, Sec. 8, paragraphs 11 and 18 provide as follows:

"11. To declare war, Grant letters of Marque and Reprisal and make rules concerning capture on land and water."

"18. To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the Government of the United States or in any Department or Office thereof."

Certainly legislation seeking to stabilize living costs when the scarcity of many of the necessities of life are accentuated by the war, would be a very natural exercise of the power thus granted to the Congress in the prosecution of the war.

The right of a city to impose restrictions upon the channels of the trade within its boundaries, must be found in the exercise of its police power. The subjects which can be regulated must be those affected with a public interest or that so involve the public health, morals, safety or well-being as to require legislative restriction or protection. It has been frequently held, particularly during times of great economic disturbance or in time of war that price control of the necessities of life is a very necessary and proper exercise of the police power of the State.

In **Holsman v Thomas etc., 112 Oh St 397,** in discussing the police power, the court stated on page 404 of the opinion:

"Now, the police power relates not merely to the public health and to public physical safety, but also to public financial safety. Laws may be passed within the police power to protect the public from financial loss * * *."

In the case of **Leonard v State, 100 Oh St 456,** the court had before it the question of the constitutionality of an act regulating the cold storage of foods. In part at least the purpose of the act was to prevent the hoarding of foods to force higher prices. In the opinion on page 459 the court said:

"The dimensions of the government's police power are identical with the dimensions of the government's duty to protect and promote the public welfare. The measure of police power must square with the measure of public necessity. * * * If there appears in the phrasing of the law and the practical operation of the law a reasonable relation to the public need, its comfort, health, safety and protection, then such act is constitutional unless some express provision of the constitution be clearly violated in the operation of the act. * * * The war has developed new conditions which we cannot ignore if we would and which we should not ignore if we could. Not

the least of these new conditions that now confront us is the unconscionable profiteering. The right of the government to regulate profiteering is centuries old. * * *"

See also, Hebben v New York, 291 U. S. 502, page 539, Parker v Brown, 317 U. S. 341 (Cal.).

The City of Cleveland, by the adoption of its charter under the provisions of the Constitution of the State, was thereby endowed with all the powers of local self-government and was therefore acting within its constitutional powers (**Art. XVIII, Sec. 3, Constitution of Ohio**) in enacting the provisions of §2207-1-3 inclusive, in the exercise of its police power.

But it is contended that even though the city has the constitutional power to control prices of food products in the exercise of its police power, the fact that the Federal Government, in the exercise of its war power has entered the field with a complete price control act or intended to cover the entire field, the city is thereby prevented from thereafter dealing with the same subject. With this view we are not in accord.

In 11 American Jurisprudence, paragraph 175, page 872, it is stated:

"The supreme court at an early date laid down a broad formula which from that time has been the general principle governing the possibility of state exercise of power. The court held that the states may exercise concurrent or independent power in all cases except three: (1) where the power is lodged exclusively in the Federal Constitution; (2) where it is given to the United States and prohibited to the states; (3) where, from the nature and subjects of the power, it must necessarily be exercised by the national government. * * *."

The power which the City of Cleveland is attempting to exercise by its price control ordinance in the exercise of its police power, does not come within any one of these three classes. Therefore, unless there be a conflict between the Federal act in the exercise of its power to conduct the war, and the Act of the City ordinance passed under its police power, both may be enforced within their respective jurisdictions.

Referring again to 11 American Jurisprudence, paragraph 174, pages 872 and 873, the rule is stated as follows:

"The main question in cases presenting this problem is the determination of 'the existence of a conflict. When the question is where the Federal act overrides a state law, the entire scheme of the statutes must be considered and a state law enacted under any of the reserved powers—especially if under the police power—is not to be set aside as inconsistent with an act of Congress, unless there is actual repugnancy or Congress has at least manifested a purpose to exercise its paramount authority over the subject. The rule has been laid down that statutes of Congress and a state are in conflict when one incurs the penalty of the Federal law by obeying the state law or incurs the penalty of the state law by obeying the Federal law. Thus, if a state statute prohibiting an act as a police measure can be upheld and enforced without obstructing or embarrassing the execution of an act of Congress prohibiting the same act as a war measure, the state statute may be enforced. * * *"

The question of the right of the state to enforce police regulations after Congress has enacted laws on the same subject, was presented to the supreme court of Vermont in the case of In re Antonio Guerra, 94 Vt. 1. The action was in habeas corpus, testing the validity of the imprisonment of the relator who had been convicted of keeping and exposing "intoxicating liquor with intent to sell and furnish the same without authority, contrary to the form of the statutes etc." He had been found guilty and sentenced to the House of Correction. The court said:

"On the trial the relator objected that the court was without jurisdiction in the premises, for that the statute upon which the complaint was founded was suspended or abrogated by the passage of an act of Congress regulating the traffic in intoxicating liquors, which Act was and is the supreme law of the land and that the courts of the United States had the sole jurisdiction of offenses thereunder."

The Act of Congress referred to was a war time measure during the first World War and did not refer to a subsequent prohibition law passed to make operative the Eighteenth Amendment to the Constitution.

Paragraphs 4 to 10 of the syllabus of the case are as follows:

"4. Congress has no general power to enact police regula-

tions operative within the territorial limits of a state; that power having been left with the individual states and it cannot be taken away from them, either wholly or in part.

"5. The exercise of the police powers by the state is unqualified and exclusive, so long as its regulations do not invade, obstruct, or impede the exercise of any authority confided to the nation by the Federal Constitution or deprive a citizen of rights guaranteed to him thereunder.

"6. The police power of the state is but another name for the power of government; it is inherent in the state and is not a grant derived from or under a written Constitution; it is so essential that the State cannot divest itself of its right or duty in respect of its full exercise, nor can the Federal Government interfere in that exercise except by virtue of some Constitutional authority.

"7. Subject to constitutional limitations, the legislature in the exercise of the police power, may pass measures for the general welfare of the state, and is itself the judge of the necessity or expediency of the means adopted.

"8. A state law enacted under any of the reserved powers is not to be set aside as inconsistent with an act of Congress unless there is actual repugnancy, or unless Congress has at least manifested a purpose to exercise its paramount authority over the subject.

"9. A state statute prohibiting an act as a police measure is not invalidated by an act of Congress prohibiting the same act as a war measure if the former can be upheld and enforced without obstructing or embarrassing the execution of the latter.

"10. Though a state police regulation must yield to a valid act of Congress, it yields only when and to the extent that its enforcement conflicts therewith or with the exercise of rights conferred, or the discharge of duties enjoined, by the paramount act, and to the extent that they are in harmony, the acts are concurrent, the one supplementing the other."

We find no conflict or repugnancy between the two acts. The object each seeks to accomplish is to fix fair and reasonable prices for the necessities of life. Under the test above suggested, there is an absolute accord in the price levels to be maintained by the two acts. The fact that under the Federal Act it must be shown that the defendant **wilfully** violated the price ceilings to establish guilt, while under the city ordinance no such requirement is found, in no way affects this question. We are concerned in considering the question of conflict with

the object to be accomplished, not the procedural requirements to establish guilt.

It is further contended that the city council in adopting by reference the Federal law, thereby incorporating in the ordinance as the ceiling prices to be enforced the prices as fixed under the authority of the Federal Act, by Federal agencies, constitutes an unlawful delegation of the council's legislative authority. Such contention however is contrary to the great weight of authority. The power of a legislative body to incorporate and adopt as provisions of statutes enacted, other existing laws and regulations of its own or other jurisdictions, has long been recognized.

In **37 Ohio Jurisprudence, ¶49, page 339,** the rule is stated as follows:

"Reference statutes are of frequent use in avoiding encumbrance of the statute books by unnecessary repetition. Their object is to incorporate into the act of which they are a part the provisions of other statutes by reference and adoption."

And, in the case of **State of Ohio ex v Gongwer, 114 Oh St 642,** the court on page 649 of the opinion said:

"The effectiveness of legislation by reference has been so generally recognized in Ohio that no very specific declaration appears in the reported cases. As far back as the case of **Heirs of Ludlow v Johnston,** reported in **3 Ohio 553,** 17 Am. Dec. 609, it was declared, in referring to legislation by reference:

'For this purpose, the law referred to is, in effect, incorporated with and becomes a part of the one in which the reference is made, and so long as that statute continues will remain a part of it.'

"And as recently as the case of **State ex v Zangerle, Auditor, 101 Oh St 235,** 128 N. E. 165, this court applied §26 GC to contemporaneous and all subsequent legislation. It is a class of legislation so generally recognized in the various state jurisdictions and in the jurisdiction of the United States, that we think the rule may safely be stated that such legislation is effective wherever it is not, by constitutional provision expressly prohibited. At any rate in Ohio it is a recognized mode of legislation."

The fact that the ceiling prices may change from time to time in the proper administration of the provisions of the

law by the Office of Price Administration does not make its adoption by the city council an unconstitutional act. The Congress, in the exercise of its war power, determined that in the prosecution of the war it was necessary to control the prices of certain food products, and to limit the amount each person could buy within given periods. To accomplish this purpose it enacted the fundamental rules by which these purposes could best be accomplished. The prices fixed are the result of computations made in the manner provided under rules established in the act. In no other way could there be effective legislation to deal with the question of price control. The method adopted by the Congress is clearly within its constitutional powers and the adoption of such prices when thus fixed by constitutional authority is clearly within the exercise of the constitutional rights and reserve powers of the city council.

Uniformity in results, when attempting to control prices by separate sovereigns is much to be desired if not absolutely necessary. By the adoption of the plan for fixing prices and the prices established by federal authority, absolute uniformity is accomplished.

We conclude, therefore, that the contentions of the defendant are without merit, and the judgment of the Municipal Court of Cleveland is affirmed.

MORGAN, P. J., and LIEGHLEY, J., concur.